BERTHA BELL, Plaintiff-in-Error, v. F. W. WOOL-
WORTH CO., Defendant-in-Error. —316 S. W. (2d) 34.

Western Section, Jackson.   October 4, 1957.

Rehearing denied November 1, 1957.

Certiorari denied by Supreme Court February 6, 1958.

588

W. G. Cavett, Memphis, for plaintiff in error.

Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for defendant in error.

AVERY, P. J. (W. S.)  Bertha Bell, plaintiff below and plaintiff-in-error in this Court, hereinafter referred to as

the plaintiff, brought this suit against F. W. Woolworth Company, defendant below, hereinafter referred to as defendant, alleging personal injury damages in the amount of $50,000, resulting from the fall she sustained on the stairway of defendant's mercantile building leading from its first floor to its basement, located at No. 59 North Main Street in the City of Memphis, Tennessee.

The accident occurred on or about September 6, 1955, at about 2 o'clock p.m. and while said building occupied by defendant as a merchant was open for business, and while plaintiff was a prospective customer of the defendant.

The essence of the negligence charged in the declaration is that the defendant was offering for sale and selling at a lunch counter on the first floor of said building certain foods, including ice cream, wrapped in cellophane or like substance for customers to eat there in the building and that defendant kept no disposal cans or containers in which customers could deposit such wrappers, but that defendant permitted them to dispose of the wrappers by throwing them on the floor and steps, and that sufficient employees and methods to warn customers of the danger incident to such disposition of the wrappers were not maintained by defendant, which such action on the part of defendant was dangerous to its customers, and that no precaution was taken by it to prevent injury to its customers.

Plaintiff's declaration averred that she was in the store, started to descend into the basement on the regular stairway used by the customers and that "she stepped on a greasy, slippery wrapper that defendant had permitted to accumulate on its steps leading to its base-

ment'', which caused her to slip and she fell to the basement floor, causing her injury.

The declaration further alleged that defendant knew, or by the exercise of reasonable diligence should have known, that such wrapper was on the steps and it made no effort to remove it before her injury.

Defendant filed pleas of not guilty and proximate contributory negligence, and on motion to plead more specifically and by its specific plea, it categorically denied each and every act of negligence and neglect of duty set out in the declaration. The plea further averred that plaintiff was in defendant's store at the time of her alleged injury, started down the stairway leading to the basement when her shoe heel hung on the steps, about four steps from the bottom which caused her to fall and resulted in her injury.

At the conclusion of plaintiff's proof, on motion seasonably made by defendant, the Trial Court directed a verdict in favor of the defendant, entered judgment thereon, and dismissed plaintiff's suit. Her appeal was properly prayed, granted and perfected to this Court after motion for new trial was overruled, and has assigned as error the action of the Trial Court in directing a verdict for defendant for the reason that proof of defendant's negligence was ample to take the issues to the jury.

The substance of the testimony of plaintiff is that she looked down the steps before she started down and saw nothing on them and that she continued going down and looking as she went; that when she reached a point below what she referred to as a wide step, she slipped and fell to the basement floor. The fall caused her to

blackout for a few seconds and when she came to herself she had a paper with ice cream on it sticking on the heel of her right shoe. She stated that she had been a regular customer of defendant prior to the accident but that she had not been back in the store since the accident; that on the day of her fall and injury the store was crowded, the clerks were all so busy on the first floor that she could not get waited on and, after looking around on the first floor, she started down the steps to the basement where she fell. The snack bar on the first floor was located about 15 feet from the top end of the steps leading to the basement. A cashier in the basement had a station near the foot of the steps, where she had plain view of the steps from the bottom to the top. No one was with the plaintiff at the time she fell.

Elizabeth Collins, a witness for plaintiff, testified that she had been in the store most every month during 1954 and 1955, and that she had noticed paper napkins with ice cream on them lying in the aisle on the floor next to the snack bar and she had noticed children throwing them down there. The witness said she was a nurse and baby-sitter and that at the time plaintiff was injured, she had been living in Arkansas for about three years. She had been over to the home of plaintiff two or three days before plaintiff's injury. As to the times and dates when she was in the store during the years 1954 and 1955 she could only say she had been in there once or twice each month.

Joe Scott, a witness for plaintiff, testified that he worked for George H. McFadden & Brother, and ate lunch most every day in defendant's place of business; that he was in the store about a week before plaintiff got

hurt and had patronized the store for approximately seven months. His statement of the condition existing around the snack bar may be summarized in his answer to plaintiff's question as follows:

"* * * I would see people that passed then go and eat, and just throw the napkins on the floor. Some of it had mustard or mayonnaise on it, or things like that; and I have seen just different, various times, that it really wasn't clean or clean enough for persons to go and stand up to the little bar and eat. There were paper sacks and everything." (R. 73)

He was asked whether or not he had seen any of the employees of defendant cleaning up the floor and he said:

"I did see a lady, she would go around every once in a while and clean it up. I have seen her there." (R. 73)

He described the lady as a "colored lady". He was questioned as to when he would see this woman cleaning up the floor, and he said:

"Probably at lunch time. I have seen her going around at lunch time, cleaning up, that is all." (R. 74)

On cross-examination, he stated that he had never been in there to eat lunch after 2:30. He located the lunch counter as being over against the north wall of the store and that the steps going to the basement were in the center of the store, some 20 or 25 feet away.

Roy Blackwood, witness for plaintiff, testified that he knew plaintiff and had eaten lunch at the snack bar and at the restaurant in the basement off and on for six

years; that he was in the building the afternoon that plaintiff was hurt and was there two or three days before that. The substance of his testimony is that about the date the plaintiff was injured, the National Baptist Colored Convention was in progress at the Auditorium and the store was crowded with delegates eating at the snack bar, which continued for a period of four or five days, and he saw napkins with mustard on them on the floor and "on the afternoon of September 6th I saw it on the steps". (R. 77) He stated that he did not see any ice cream on the floor but he did say when asked what it looked like on the napkins—

"Well, it was yellow and looked like mustard, I am not sure that it was, sir." (R. 78)

The witness stated that he went there looking for plaintiff; that he had information she fell in the basement and that he went into the basement, came back up the steps, and found her in the telephone booth; that he went and got his car, put her in it and took her home. He stated that at the time of the accident, plaintiff's brother was working for him, had painted four of his houses, and that the witness had a mortgage on the house in which plaintiff lived and the one next door. (R. 79) He further said that he had not seen anyone cleaning up before that at any time when he was there.

Clyde Bell testified that he was a brother of the plaintiff and that they lived together at 966 Looney Street. He knew nothing about how the accident occurred and only undertook to tell about her injury and suffering.

Nancy Bell, mother of plaintiff, also testified to plaintiff's suffering and injury, but knew nothing about the

conditions existing in the store where plaintiff was injured.

From the record it is shown that the steps are located at about the center of the first floor from the sides of the building. It is not shown the relative position of the steps from the end of the first floor or the basement. The distance from the steps to the lunch counter is about 15 feet. The lunch counter is practically against the north wall of the first floor and there is a merchandise counter with aisle located between the lunch counter or snack bar and the steps. There are handrails along the respective sides of the steps.

The record does not show that the employees of defendant had any notice that a paper wrapper of any nature was on the steps or floor at the time of plaintiff's injury. It was not seen by plaintiff until after she had fallen.

It is the insistence of the plaintiff that from the facts proven, both by circumstances and positive proof, the negligence of the defendant had been sufficiently proven to carry the issues to the jury. The proof established by the plaintiff, as hereinbefore stated, is that a colored woman had been seen around the snack bar at the lunch hour on some of the days when witness was there, cleaning up the floor. The proof establishes, either as a fact or by proof from which it is proper that an inference could be drawn, that defendant kept no containers about the place; permitted customers to drop and throw wrappers on the floor where customers walked for a long time; had no employees to warn customers of the dangerous conditions so existing and/or to take up and dispose of the wrappers as they were dropped; that defendant knew

or by the exercise of due care should have known that the selling of such merchandise and permitting customers to drop the wrappers from ice cream and foodstuffs on the floor was dangerous, and that defendant could have reasonably foreseen that some injury would result from such activity. In disposing of defendant's motion for a directed verdict, the Trial Court said:

"In this case the Court sustains the motion for a directed verdict, at the end of the plaintiff's proof. There is no evidence to indicate that the defendant, or any of its employees, placed any foreign substance on the stairs, and there is no evidence whatever as to any other time any foreign substance being on these stairs. There is no evidence in this record as to when or how the foreign substance that the plaintiff testified was on the stairs got there, whether it had been dropped by some customer ten feet ahead of her or not, no evidence whatsoever with reference to that; and therefore, in view of the holding of the Appellate Courts of Tennessee in similar cases, such as Pratt against Woolworth Company, Fazzin against Kroger Grocery and Baking Company, and the L & N case, concerning the banana peel in the vestibule of the train, the proof fails to make an issue for the jury, at the end of all the plaintiff's proof with reference as to how the accident happened.

"Now, the fact that in one part of the store, up there by the snack bar, the proof might have shown defects, or an unsafe condition, of which the defendant should have notice, or might have had, wouldn't make that defendant liable for a condition in a differ-

ent part of the store where it is not shown that the defendant should be charged with notice as to that part of the store. There is not one line of testimony that at any other time was there one bit of foreign substance on the steps, any more than there was more than one piece of bread and butter on the floor, in the Nashville case. So what the Court held in that case is conclusive of what course should be taken by the Court in this case.'' (R. 99, 100)

Defendant contends that no negligence of any kind or character has been shown and in his brief he refers to an Opinion by the Middle Section of this Court in the case of Mrs. Belle Pratt v. F. W. Woolworth Company, which Opinion was filed June 23, 1945, and though the case is not reported, he has attached to his brief a copy of same. That Opinion is not referred to as authority, but in the Opinion some of the authorities herein referred to are set out as a basis for the Court's conclusion.

■ ■ The only issue posed by the Assignment of Error is whether or not the Trial Court erred in directing the verdict on motion of defendant. In such case it is the duty of this Court to review the entire record and determine:

(1) Whether or not there is any evidence in the record disclosing facts or such inference as may be properly drawn therefrom, to carry the case to the jury, or viewing the evidence most favorable to the plaintiff, discarding all countervailing evidence, did the Court err in directing the verdict?

(2) Taking all the evidence favorable to the plaintiff, discarding all countervailing evidence, and taking the strongest legitimate view of such evidence in behalf of

the plaintiff, allowing all reasonable inferences in plaintiff's favor, and determine whether there is any dispute as to any determinative evidence or doubt to be drawn from the whole evidence by which the minds of reasonable men might differ as to the conclusion.

In either of such instances, the motion for a directed verdict would be denied. Hall v. De Saussure, 41 Tenn. App. 572, 297 S. W. (2d) 81, 84; Coatney v. S. W. Elec. Corp., 1956, 40 Tenn. App, 541, 292 S. W. (2d) 420, 422; Johnson v. Johnson City, 41 Tenn. App. 148, 292 S. W. (2d) 794; Lackey v. Met. Life Ins. Co., 30 Tenn. App. 390, 397, 206 S. W. (2d) 806; Poole v. First Natl. Bank of Smyrna, 1946, 29 Tenn. App. 327, 196 S. W. (2d) 563; Schindler v. Southern Coach Lines, 1949, 188 Tenn. 169, 173, 217 S. W. (2d) 775; Prudential Ins. Co. of America v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358. This position is so fundamental that while many other authorities could be cited it is useless.

██ To support an action of negligence, such as we have in this case, it must appear that defendant knew, or in the exercise of reasonable care, should have known that the acts or omissions charged, involved dangers to its customers. Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 29, 211 S. W. (2d) 450, 452; Gentry v. Taylor, 182 Tenn. 223, 185 S. W. (2d) 521.

██ The particular harm which befell the plaintiff, Bertha Bell, in the instant case, need not have been foreseeable, for it is only that some such harm of a like general character was reasonably foreseeable as a likely result of the defendant's failure to use reasonable care to keep the floors free from such substances which might

cause their customers to slip and fall, and thereby be injured.

■ Applying these rules to the facts in this case, it presents a simple question—Was the defendant guilty of negligence? We do not think so.

There is no proof in this record, as a positive fact, that there was any substance on the steps through the negligence of defendant, which might have caused plaintiff's fall. It could be reasonably inferred from her statement that she slipped and fell on the steps, for after she reached the basement floor there was sticking to the bottom of her shoe heel a paper with some substance on it that could have caused her to slip and fall. The only other proof in the record that there was anything on the steps during the entire afternoon that plaintiff fell is that of the witness Blackwood, who said that he saw a paper wrapper with something like mayonnaise on it lying on the steps when he went to see about plaintiff in response to her call. There is no proof in the record of any kind or character with respect to the length of time the paper which Blackwood says he saw had been on the steps or that defendant's employees had any knowledge that such a paper was on the steps; neither is there any proof how long the paper sticking to the heel of plaintiff's shoe, after she fell into the basement, had been on the steps at the time she stepped on it, nor is there any proof that any employee of the defendant knew or should have known that such paper was on the steps.

It is said that the cashier in the basement had her desk near the bottom of the steps and that she could have seen this paper lying on the steps. There is no

proof that this cashier's desk was so located that she had a front view of the steps. It could not be assumed that she had any such view, but on the contrary, with the cashier's desk located near the foot of the steps, it would seem reasonable that she would face in the other direction as she received cash from the customers and operated her cash register. It is not contended that any unusual or any quantity of paper at any time or on any date, had accumulated on the steps. There is some proof that in the aisle next to the lunch counter there were times when wrappers from sandwiches, hotdogs, and ice cream were left on the floor. There is proof that there was an aisle and merchandise counter between that particular aisle by the snack bar and the steps, so the only proof of any paper or debris of any kind ever accumulating on the steps, or by any inference that could be drawn from such proof, would be just the two above referred to pieces,—one of the wrapper sticking to the heel of plaintiff's shoe and the other seen by Blackwood.

It was not the duty of the defendant to have some person to trail along in front of every customer that may have started to use the steps to brush any foreign matter from before them. Such requirement would be unreasonable and the failure to do such a thing would not be negligence in the least. The defendant is required only to use reasonable care.

Two of the cases from other states most nearly in point, relied upon by plaintiff are: Foley v. F. W. Woolworth Co., 293 Mass. 232, 234, 199 N. E. 739, 740; Gallagher v. Stop & Shop, Inc., 1955, 332 Mass. 560, 126 N. E. (2d) 190, 191, 192.

Two Tennessee cases relied upon by plaintiff, most nearly in point are: Martin v. Miller Bros. Co., 26 Tenn. App. 110, 168 S. W. (2d) 187; Vogue, Inc. v. Cox, 28 Tenn. App. 344, 190 S. W. (2d) 307.

In the Foley case, supra, [293 Mass. 234, 199 N. E. 740] the substance on which the plaintiff had slipped was described as "vomitus". The Court said that this substance

"could not have been where it was without being exposed to the view of the waitresses at the ten counters near the foot of the stairs for a length of time sufficient for notice to the manager, or employee having the stairway in charge, and for the removal of the condition, or the protection of the users of the stairs against the condition."

In the Gallagher case, supra, the plaintiff had been in the store some thirty minutes. The substance on which the plaintiff slipped and fell was on the threshold of the exit door, the store floor and the store vestibule. Near the exit there were three booths or counters, each with a cashier and cash register, where customers paid for their purchases, with aisles on each side of these counters through which customers had to walk in order to pay for their purchases. Adjacent to each counter was a receptacle containing shopping bags for sale, and when the cashiers made sales of these bags, they had to turn around so that they faced the exit, which gave them a clear view of the floor at the door. The plaintiff paid his bill at the cashier located about seven feet from the exit and started to leave. The Opinion states [332 Mass. 560, 126 N. E. (2d) 191]:

"There was 'messy, sloppy, dirty ice cream all over the place,' some on the threshold, some in the vestibule, and some on the floor inside the store. The size of the ice cream was twelve inches in circumference and it 'was very dirty, sloppy and all broken up, the cone was all broken up in the dirty ice cream and was sloppy and messy.' There were 'a few rivulets running down the threshold four or five feet out to the sidewalk down the crevices in the surface of the floor of the outside vestibule—the ice cream was dribbling down.' There were 'quite a few heel marks leading down from the ice cream.'"

In that case, no ice cream was sold in that store and there was no evidence that the ice cream was there through acts of any person for whose conduct the defendant was responsible. The Court said:

"The plaintiff's right to recover therefore depends upon evidence from which the jury could find that the defendant, in the exercise of reasonable care, should have known of and removed this foreign substance. * * *

*    *    *    *    *    *

"We think that it could be found, however, that the presence of this ice cream on the floor and vestibule of the defendant's store constituted an appreciable danger to customers. There were three cashiers close by who, when they turned around to get shopping bags, as they frequently did, had a clear view of the floor at the exit door, the threshold, and the vestibule. The record shows that the ice cream must have come upon the floor within the period of thirty minutes which elapsed between the time when the

plaintiff entered the store and when he left. Some appreciable time must have elapsed also for the ice cream to have gotten into the condition it was in after the accident as described by the plaintiff.''

In the case of Martin v. Miller Bros. Co., supra, the plaintiff fell in the store of defendant, sustaining a broken hip which incapacitated her for many months. She had just started across to the hosiery counter and both of her feet slipped out from under her and she fell on her left side. She was picked up and placed in a chair by employees of defendant. She testified that in attempting to get up after the fall, she put her hands on the floor and stated that "it was oily and greasy, and they seemed to slide, and I couldn't make it''; that a part of this greasy substance was left on her coat and on the side of her shoe. These were exhibited in court, showing greasy marks which plaintiff stated was from the oil on the floor, and she stated that on this oily linoleum there were skid marks after her fall of some 12 to 18 inches in length and that the spots of oil were large and had a greenish color.

At the close of plaintiff's proof, there was a motion by defendant for a directed verdict which was overruled by the Court, and the defendant put on his proof from which it developed that the linoleum on the floor had been there for years, had become hard, and that after many applications of the cleaning substance it would remain on this linoleum undried for some time, the linoleum not absorbing it as readily as when it was newer. This substance was described as "Nutro-Gloss", "ordinarily called liquid wax, wax not soluble in water, a solid content average liquid wax, ten to fourteen percent". The proof showed that the wax was widely used and ordi-

narily dried in 20 to 30 minutes, and that the last application on that floor was made on Sunday morning before the accident occurred on Tuesday. Samples of the linoleum were offered at the trial and the wax was poured on it. None of the store's janitors testified, but a janitor from the Courthouse testified for defendant, who stated that "if the solution got on one's clothing after a fall that the solution was improperly applied". In rebuttal, Mrs. Martin stated that the sample of linoleum exhibited to the jury appeared to be the same as that on which she fell. The store detective testified that he had been working at that store for 15 months and during that time the floors were in the same condition as they were in on the day of the trial, and "not more than half a dozen that I know of, I don't know exactly", had fallen on these floors.

The foregoing Opinion was prepared for the Court by Judge Burnett of the Eastern Division, and in the Opinion he said [26 Tenn. App. 110, 168 S. W. (2d) 190]:

"The evidence in this case falls within the rule as announced by Judge McAmis in Mollie Coffelt v. Miller Bros. Co. handed down March 8, 1939, wherein the court said:

" 'If plaintiff had shown the grease on the floor where she fell was of the kind customarily used in polishing floors, or that it was the same kind of material used on all or a large part of the basement floor, we think the jury would have been warranted in inferring from this fact alone that the substance which caused the plaintiff to fall was placed there by one of the defendant's servants who negligently left an unusual amount of the substance at this particular

point and thus created an unexpected and dangerous condition.' ''

The Coffelt v. Miller Bros. case does not appear to be a reported case, but the rule as stated in Martin v. Miller Bros. Co., supra, certainly is a proper rule and the Court, in reversing the Lower Court, wherein the jury had been directed to return a verdict for defendant, reached the conclusion that the jury could have found that the servants of Miller Bros. Co. in polishing the floors had made an over-application of the wax which had not been absorbed by the linoleum at the time of Mrs. Coffelt's injury.

In Vogue, Inc., v. Cox, supra, the plaintiff had fallen over a pencil that had been dropped on the floor. The proof showed that it was a vivid yellow pencil similar to those used by all the other employees in the store and was found lying near the wrapping counter and the desk where employees wrote up their sales and handed the purchased articles to another employee of the store to be wrapped. When the lady fell she was immediately picked up by the saleslady and she testified that the saleslady said: "That is my pencil", and then she placed it in her hair. This saleslady was not introduced as a witness. The statement was a part of the res gestae. There was a jury verdict of $300 for the plaintiff. The error assigned was that there was no evidence to support the verdict which was said to be based on speculation and conjecture. The verdict and judgment of the Lower Court was sustained upon the theory that since the defendant did not introduce the Clerk who allegedly made the statement and who the proof showed was in defendant's store at work on the day before the trial, the jury

had a right to infer from the proof offered in that respect that the employee knew she dropped the pencil, knew it was on the floor, neglected to pick it up, and such carelessness became a menace to the customer, and if put on as a witness her testimony would have supported plaintiff's contention that defendant was negligent. Her knowledge thereof would have been imputed to the master and so the proof supplied implied knowledge on the part of the defendant.

Among the cases relied upon by defendant to support the action of the Court, is unreported Opinion by Judge Hickerson of the Middle Section of this Court in the case of Belle Pratt v. F. W. Woolworth Co., filed June 23, 1945, wherein no petition for certiorari was filed, and the Opinion was not published in the usual manner, but is found in Volume 12, Commercial Clearing House Reports, p. 468, under title of "Negligence Cases".

Counsel for defendant procured a certified copy of that Opinion and filed it as part of or appendix to his brief. In that case, plaintiff had slipped and fallen on the floor of the mercantile establishment of the defendant located in Nashville. The Opinion states that the following facts, or evidence to support them, show that:

"A lunch counter is operated by defendant along the north wall of the store. From the front entrance to the back of the store is about two hundred twelve feet. The lunch counter is about fifty feet long.

"On December 17, 1942, plaintiff entered this store as an invitee to purchase merchandise. When she was at a point a little beyond the lunch counter to the west, she slipped on the floor and fell and sustained serious and permanent injuries. Her daugh-

ter and her daughter-in-law were with her at the time.

"Defendant kept four young ladies on this floor of its store who were known as supervisors. Each of these supervisors wore a badge upon which was written the word 'information'.

"As soon as plaintiff fell one of these supervisors went to her assistance. An employee of defendant removed a small carton about one and one-half inches square from the heel of plaintiff's right shoe. This carton appeared to be one of the individual butter plates upon which defendant served butter to its customers. It was stuck to the heel of the shoe. It was given by one of these young ladies to another employee of the store and was preserved by defendant. This carton was introduced in evidence on the trial of the case and appears in the record in its original form. It does not appear what amount of butter or grease was on this carton at the time plaintiff stepped on it; but it may be reasonably inferred that it had some butter on it, as it stuck to the heel of plaintiff's shoe and was apparently the cause of plaintiff's falling.

"Customers come to defendant's store at the rate of one hundred thousand to one hundred fifty thousand each week. On the date this accident occurred the store was crowded. There is no evidence that any employee of defendant dropped this carton on the floor. The accident occurred about one o'clock in the afternoon. Immediately after plaintiff fell one of these supervisors, who saw the carton that was removed from the heel of plaintiff's shoe, said to one

of the other employees of defendant, 'I told you to clean that up'.

＊　＊　＊　＊　＊　＊

"Defendant employed a colored maid who went around the store with a dust pan and broom to pick up anything that had fallen. She went to each part of the store about once an hour."

In that case the Court first overruled defendant's motion for directed verdict, submitted question to the jury, and a verdict of $4,500 was returned, and judgment entered thereon. On motion for new trial, the Trial Court set the verdict aside and directed a verdict in favor of the defendant and plaintiff's suit was dismissed. The action of the Trial Court in directing the verdict was sustained and all assignments of error were overruled. We quote further from that case and adopt the following statements therein as the proper rule governing, not only that case, but the rights of the parties in the instant case:

"Defendant was charged with the duty to exercise ordinary care and diligence to maintain the premises in its store in a reasonably safe condition for customers of the store. Buckeye Cotton Oil Company v. Campagna, 146 Tenn. 389, 242 S. W. 646; Hill v. Caster-Knott Dry Goods Company, 25 Tenn. App. 230, 166 S. W. (2d) 638; Gargaro v. Kroger Grocery & Baking Company, 22 Tenn. App. 70, 118 S. W. (2d) 561.

He also quoted as a proper rule governing that case, and which we adopt as a controlling principle in the instant case, 38 Am. Jur. 798, Negligence, Section 136, as follows:

"The existence of a slippery place on the floor of a store, on which a customer falls, sustaining injury, is in violation of the proprietor's duty *only where he knows or reasonably should know of the presence of this dangerous condition and reasonably could prevent it or warn the customer of the danger.*" (Emphasis added.)

Plaintiff in the instant case was not shown to have gone nearer the aisle of the lunch counter than the point where the steps on which she fell led to the basement. In her bill she had charged that the defendant sold at its lunch counter "ice cream, wrapped in *cellophane* or like substance". In an amendment thereto, she charged that the defendant "permitted or allowed grease or oily paper to accumulate on said steps and thereby created, caused or contributed to cause said steps to become and be dangerous to invitee".

While we have shown the substance of the statements of plaintiff in the instant case and her witnesses hereinbefore, it seems proper to quote her exact statements with reference to the actual fall. In response to questions by her attorney, she said:

"Q. When you were there that day, did you go down the steps before you fell? A. Yes, sir, when I first walked in the store I went to the back, because I intended to buy a dress zipper; and the store was crowded. I couldn't get a sales lady to wait on me, so I walked back, looked for a few minutes, and then went down the steps. They have those rails you slide your hand on, going down the steps, naturally, going down. You won't hold there, on the steps, because if you hold you couldn't walk down, but you slide your

hand down. Looking at the steps, as far as I could see I couldn't see anything.

"Q. Did you see anything at all on the steps? A. No, sir, I did not.

"Q. Tell us in what way you went down. As you went down there, did you get to the first landing of the stairs there? A. There are a few steps, and then it is a wide step, I guess you would say about as wide as the table there. Then there are some more steps, down below that wide step. Well, just below the wide step, all I know is my right foot slipped, like you would slip if that floor there, (indicating) was slippery. My right foot slipped out, and I fell over in back. Then, when I landed I was in the basement, on my stomach, and I lay there, in the basement, on my stomach, for a few seconds. I laid on the floor, because things went black, I couldn't see anything. After I got almost up the lady cashier came to me and said, 'Are you hurt?'

"Q. Tell the Court and Jury where the cashier is in regard to the steps, how far away. A. Just as far as I am, sitting here, from Mr. Cavett there, (indicating). The cashier can look up the steps, all the way up, and she could see all the steps.

"Q. Tell the Court and Jury whether or not your heel caught on a step. A. Well, it wasn't caught. The steps are plain. The steps, I would say, are as plain as this here, (indicating the step in front of witness stand). There are not any rough places on the steps. The way I was going down the steps, with my hand on the banister, if my foot had not slipped on the ice cream paper I would not have fell.

"Q. How do you know that was an ice cream paper? A. After I fell, I know, sir, when I came to, myself. I lay there, by the steps, for a few seconds, and I came to, myself. This lady asked me if I was hurt. I said, 'I don't know'. I felt funny and dizzy after it was over. I looked at the heel and the paper was sticking on the heel, with ice cream on it, sticky. I just stood there for a few seconds, I couldn't do anything. (R. 26, 27)

Her counsel asked her:

"Q. Was there anything on that step to catch you, as far as you know, except that ice cream napkin?

"A. There wasn't anything else. If it hadn't been for the ice cream paper I wouldn't have slipped, because that is the only thing there was for me to slip on. There wasn't anything to catch my heel on. (R. 35, 36)

And in answer to a further question she said:

"Q. Tell the Court and Jury whether or not you looked down the steps when you went down the steps.

"A. Yes, sir. I always look down the steps, when I am going down the steps, I look down.

"Q. Did you see anything before you stepped on—on this particular thing?

"A. No, sir, if I had seen it I wouldn't have stepped on it. (R. 36, 37)

On cross-examination, plaintiff stated that she bought nothing in the store before the accident, but after the accident and before she left the store she did buy something but does not remember what it was. (R. 40, 41) She

also stated that she was alone on the steps at the time she fell.

There is no proof in the record that the plaintiff, on the day she was injured, had been in any aisle of the store where papers, wrappers, or any substance from the lunch counter was said to have been thrown and left in the path of customers. There is no proof that she had been nearer the lunch counter than the steps on which she fell. There is no proof that was introduced from which it can be inferred that any employee of the defendant had thrown any wrappers or trash of any kind on the steps. There is no proof in the record that the paper napkin which Blackwood claims to have seen when he went to the store in response to the call from the plaintiff, was on the steps when plaintiff fell. More than once, she stated that there was nothing on the steps, except that one paper which she claims stuck to her heel. There is no proof in the record from which it can be inferred that any employee had or should have had notice that such a paper as plaintiff described sticking to her heel had been left on the steps.

As we see this record, there is no proof from which any inference could be drawn that defendant's negligence caused the plaintiff's injury. There is no proof from which the minds of reasonable men could differ with respect to the negligence or the diligence of defendant or the rights of the parties.

The Assignments of Error are overruled and the judgment of the Trial Court is affirmed, with costs against the plaintiff.

Carney and Bejach, JJ., concur.