MARION KEENAN *vs.* E. M. LOEW'S, INC.

Suffolk.    January 5, 1939. — February 1, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Negligence*, Theatre. *Evidence*, Conflicting statements of witness. *Witness*, Cross-examination.

On the record, a statement made by a plaintiff's witness on cross-examination was not conclusive; at most, such statement and others made in his direct and redirect examination were conflicting, and the truth of the matter was for the jury.

Evidence that examination of a seat in a theatre after it had collapsed under a patron disclosed that supporting brackets were a "little loose," that holes, where screws fastening the seat to the brackets had been, looked as though the screws had been pulled out "with a claw hammer," and that the wood around the holes was rotten, warranted findings that the defective condition of the seat was not of recent origin and that the proprietor was negligent in failing seasonably to discover it.

TORT. Writ in the Superior Court dated June 11, 1934.

There was a verdict for the plaintiff in the sum of $475 at the trial before *Walsh*, J. The defendant alleged exceptions.

The case was submitted on briefs.

*D. L. Allison*, for the defendant.

*G. W. Shinney & T. F. Garrity, Jr.* for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff, who alleged that she was injured by the fall of a seat which she was occupying in the defendant's theatre. The only exception is to the denial of the defendant's motion for a directed verdict. No question was raised as to the control of the premises by the defendant. The jury could have found that the plaintiff was an invitee, having entered the theatre with her husband and son upon tickets which had been purchased. Some time after the plaintiff had taken her seat, which was the second in from the aisle, she got up to permit other people to pass her who were on their way to vacant seats in the same row. In about an hour she got

up a second time to allow other people who were brought by the usher to pass her. She pushed her seat up so that there would be room for them to pass, pulled the seat down, and as she was in the act of sitting down, the seat broke and she fell with the front part of the seat resting on her ankles and its back upon the floor. She noticed nothing wrong with the seat before the accident. After she was taken to the manager's office her husband returned with an usher and looked at the seat with the aid of a flash light. The seat rested on brackets which were a "little loose." There were shoulders, one half an inch wide, which were screwed to the bottom of the seat. These shoulders were designed to rest upon the brackets. This is all the plaintiff's husband testified that he observed at that time. The seat was then taken to the manager's office where the husband examined it again and "you could see where the screws came out of the wood; . . . the holes were like if you pulled the screws out with a claw hammer, and the wood, to his knowledge was rotten, it wasn't sound; . . . the wood was all broken around it, split like." Upon cross-examination the plaintiff's husband was asked: "So that the way you want to leave it now, regardless of what you may have said before, Mr. Keenan, the way you want to leave it now is that when you looked at the bottom of the seat immediately after the accident all that you observed was that in certain places, in certain of the holes where screws had been, it looked as if they had been pulled out with· a claw hammer?" To this he answered, "Correct." Later on, in redirect examination, the husband testified that when he examined the seat in the manager's office "the holes were sheared off on one side as if something had been pulled off with a claw hammer; and that upon the side of the holes it didn't look so good — it looked as if it was gone all rotten." The defendant contends that the plaintiff's husband is bound by his answer in cross-examination "except in so far as it was qualified by his further statement on redirect examination," relying upon *Sullivan v. Boston Elevated Railway*, 224 Mass. 405, and *Martin v. Boston Elevated Railway*, 262 Mass. 542. We think the

contention is unsound.  As already appears, the husband made two examinations of the seat, the first one as the seat lay in the row, and the second one at the manager's office. The question as framed directed the witness's attention to what he observed "immediately after the accident."  It was for the jury to determine whether the question on cross-examination did not specifically refer to this first examination.  The testimony in redirect examination seems to bear this out.  The result is that, taken most favorably to the defendant, the husband's testimony was conflicting and it was for the jury to determine to what it amounted. *Thibeault* v. *Poole*, 283 Mass. 480, 482.  *Bennett* v. *Fitzgerald*, 284 Mass. 535, 537.  Compare *Coyle* v. *Worcester Consolidated Street Railway*, 273 Mass. 475, 477; *Crowley* v. *Swanson*, 283 Mass. 82, 84, 85; *Garland* v. *Stetson*, 292 Mass. 95, 97–98.

"The defendant owed to the plaintiff as an invitee the general duty to use ordinary care and diligence to put and keep its theatre in a reasonably safe condition, having regard to the construction of the place, the character of the entertainment given and the customary conduct of persons attending, *Rosston* v. *Sullivan*, 278 Mass. 31, or at least to warn her against any dangers attendant upon the use of the premises which were not known to her or obvious to any ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the defendant.  *Kelley* v. *Goldberg*, 288 Mass. 79." *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258, 259.  See *Hale* v. *McLaughlin*, 274 Mass. 308, 311; *Correira* v. *Atlantic Amusement Co., ante,* 81.

The defendant has not argued that the plaintiff was guilty of contributory negligence, but contends that there was no evidence of any violation of its duty in that it could not have discovered "the defect" by the exercise of ordinary care and diligence.  It was the duty of the defendant, as far as reasonably practicable, to maintain its seat in a reasonably safe condition for the use of the plaintiff.  *Hillis* v. *Sears, Roebuck & Co.* 284 Mass. 320, 321.  It, however, was not an insurer of safety.  But it was its duty to use

reasonable care to discover a concealed danger, if the danger in this case were concealed. *Brogna* v. *Capodilupo*, 279 Mass. 586, 591. If, without action for which it is responsible, a dangerous condition arises, the law allows a defendant a reasonable opportunity to become informed of the danger and to take measures to remedy it. It is not liable in such a case unless it is negligent in failing to inform itself and to take appropriate action. *White* v. *Mugar*, 280 Mass. 73, 75. There was evidence in behalf of the defendant that, on the morning of the accident, all of the seats in the theatre had been inspected by employees of the defendant, who passed through the aisles examining the seats to see whether there were any that were loose and whether any required special attention. There was no evidence as to the length of time the seats had been in the theatre, but there was evidence that they were of standard construction and of a type in common use in theatres. There was evidence that the defendant had been operating the theatre for "just a few months prior" to the date of the injury, and that the seats in use on that day were in the theatre at the time the defendant acquired it. There was further evidence that one could not see the condition of the wood "underneath the brackets when the brackets were screwed in place against the seat," and that "anybody looking at that bracket when it was screwed in place couldn't tell what the wood looked like underneath." It was for the jury to say how much, if any, of this evidence it would accept.

Although the question is close, we think it was for the jury to determine whether the defendant was negligent in failing to discover the condition of the seat, and whether it failed to use the care that an owner of ordinary prudence in the same situation would have used to discover a condition of danger attending the use of the seat. From the evidence that the brackets were a "little loose," and the description of the wood of the seat as to its "rotten" condition and its appearance where the screws had been, the finding was justified that the condition was not transitory or of recent origin, and it was for the jury to determine whether a reasonably diligent proprietor of a theatre should have

known of the existence of these conditions.          Compare
*Tovey* v. *G. E. Lothrop Theatres Co.* 288 Mass. 346, 348.

The facts in the case at bar are distinguishable from
those in *Kelley* v. *W. D. Quimby & Co. Inc.* 227 Mass. 93,
*Downing* v. *Jordan Marsh Co.* 234 Mass. 159, and *Russell*
v. *Spaulding*, 238 Mass. 206, upon which the defendant
relies.

*Exceptions overruled.*