MURRAY J. GALLAGHER *vs.* STOP & SHOP, INC.

Suffolk. February 8, 1955. — April 28, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Negligence*, Store, Slippery substance.

Evidence of the appearance of melted ice cream from a "broken up"
cone on the floor of a store, the threshold of an open exit door and a
vestibule outside, and in plain view of nearby cashiers when they
turned toward the door, as they frequently did, warranted a find-
ing that the ice cream had been there so long, although not more than
thirty minutes, before a customer leaving the store slipped on it and
fell that the proprietor of the store was negligent toward the customer
in not having discovered and removed it.

TORT. Writ in the Superior Court dated July 31, 1951.

At the trial before *Swift*, J., there was a verdict for the
plaintiff, and the defendant alleged exceptions.

W. *Lloyd Allen*, for the defendant.
*Robert P. O'Reilly*, for the plaintiff.

COUNIHAN, J. The plaintiff, a business visitor, was hurt when he slipped and fell on the floor of the defendant's store. Pursuant to court order the plaintiff specified that the defendant was negligent in that it "permitted the remnants of a melted ice cream cone to remain an unreasonable length of time on its premises in a place where the defendant knew its customers had to walk; thereby causing a danger to its customers." The judge denied a motion of the defendant that a verdict be directed for it, and the correctness of that ruling is the only question presented by the defendant's bill of exceptions. We are of opinion that there was no error.

The evidence in its aspects most favorable to the plaintiff may be summarized as follows: The plaintiff at or about 4 P.M. on July 11, 1951, entered a store of the defendant on Harvard Avenue, Allston, and made some purchases. He was in the store about thirty minutes. As one faces the front of the store from the street the entrance and exit doors are in a recessed area making an open vestibule with the entrance on the right and the exit on the left. When he entered the store and as he was about to leave, the exit door was wide open. When he crossed the vestibule to enter he saw no ice cream on the threshold of the exit door or on the floor of the store or the vestibule. Near the exit there were three booths or counters, each with a cashier and a cash register, where customers paid for their purchases. On each side of these counters were aisles, through one of which the customer walked and in the other a cashier stood with her back to the exit. Adjacent to each counter and to the rear of the cashier there was a receptacle containing shopping bags for sale. To make a sale of these bags the cashier was required to turn around so that she faced the exit which gave her a clear view of the floor at the door, the threshold, and the vestibule. It was "not unusual for her to reach for such a shopping bag . . . she did that all day."

The plaintiff on the way out went to the first counter, the front of which was about seven feet from the exit, and paid for his purchases. He started to leave when "all at once my feet went up and I was down on my back." He fell on the threshold and his body was lying partly on the threshold and partly on the floor of the vestibule. There was "messy, sloppy, dirty ice cream all over the place," some on the threshold, some in the vestibule, and some on the floor inside the store. The size of the ice cream was twelve inches in circumference and it "was very dirty, sloppy and all broken up, the cone was all broken up in the dirty ice cream and was sloppy and messy." There were "a few rivulets running down the threshold four or five feet out to the sidewalk down the crevices in the surface of the floor of the outside vestibule — the ice cream was dribbling down." There were "quite a few heel marks leading from the ice cream." Prior to the day of the accident the plaintiff had observed, from a position where the cashier stood, the entrance and exit area including the threshold. It was a sunshiny summer day but at the time of the accident the front of the store was in the shade. Except for the cashiers there were no other employees of the defendant in that part of the store. One of the cashiers saw the plaintiff on the floor. There was no evidence that the defendant sold ice cream cones in this store.

There is no evidence that the ice cream was there through the acts of any persons for whose conduct the defendant was responsible. *Jennings* v. *First National Stores, Inc.* 295 Mass. 117. Likewise there was no evidence that the defendant or any of its employees knew of the presence of this ice cream. See *Correira* v. *Atlantic Amusement Co. Inc.* 302 Mass. 81.

The plaintiff's right to recover therefore depends upon evidence from which the jury could find that the defendant, in the exercise of reasonable care, should have known of and removed this foreign substance. The plaintiff by his specifications admits this proposition to be correct. "The effect of specifications when filed is that proof must con-

form substantially to the specifications." *Snow* v. *Metropolitan Transit Authority,* 323 Mass. 21, 23. *Gannon* v. *Summerfield Co.* 323 Mass. 25, 27.

We said in *White* v. *Mugar,* 280 Mass. 73, at page 75, "The defendant owed to customers a duty to keep the premises reasonably safe for their use. He, however, is not an insurer of safety. Where, without action for which he is responsible, a dangerous condition arises, the law allows him reasonable opportunity to become informed of the danger and to take measures to remedy it. He is not liable, in such a case, unless he is negligent in failing to inform himself and to take appropriate action." *Keenan* v. *E. M. Loew's, Inc.* 302 Mass. 309, 312.

We think that it could be found, however, that the presence of this ice cream on the floor and vestibule of the defendant's store constituted an appreciable danger to customers. There were three cashiers close by who, when they turned around to get shopping bags, as they frequently did, had a clear view of the floor at the exit door, the threshold, and the vestibule. The record shows that the ice cream must have come upon the floor within the period of thirty minutes which elapsed between the time when the plaintiff entered the store and when he left. Some appreciable time must have elapsed also for the ice cream to have gotten into the condition it was in after the accident as described by the plaintiff. See *White* v. *Mugar,* 280 Mass. 73. In *Foley* v. *F. W. Woolworth Co.* 293 Mass. 232, at page 234, the court said, "There was no direct evidence as to when the substance came into existence on the stairs. Nevertheless, from its character, its consistency . . . and general appearance the jury were warranted in drawing an inference, as they presumably did under the instructions of the judge, that it had been on the stairway long enough to have been known of and removed before the accident." The case at bar falls within the class of decisions in the first group cited in the *Foley* case. It is distinguishable from the second group of cases there cited "on the fact that in the case at bar [the *Foley* case] a sub-

stance of the character described [vomitus] could not have
been where it was without being exposed to the view of
the waitresses at the ten counters near the foot of the
stairs for a length of time sufficient for notice to the man-
ager, or employee having the stairway in charge, and for
the removal of the condition, or the protection of the users
of the stairs against the condition." This is particularly
true, we think, when this substance was on the floor right
at the exit door through which, so far as it appears in the
record, all customers had to pass to leave the store. *Hastings
v. Boston & Maine Railroad, ante,* 42. The *Hastings* case
and the cases there cited tend to show that the case at bar
was properly submitted to the jury. Compare *Kelleher* v.
*Dini's, Inc.* 331 Mass. 217.

*Exceptions overruled.*