STEVE F. CHASTAIN *vs.* HOTEL COMMANDER, INC..
(and a companion case[1]).

Middlesex.   November 5, 1957. — January 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, &
WHITTEMORE, JJ.

*Negligence*, Slippery substance, Hotel.

Evidence merely that on a certain day employees of a rendering com-
pany collected some grease and bones from the basement of a hotel and
carried them in a bucket or barrel to their truck over an outside,
open and uncovered stairway having fallen leaves on the sides of all
its steps, and that shortly thereafter a business invitee of the hotel de-
scending the stairway stepped on a substance thereon described as
"round about the size of a silver dollar in shape and brown and oily,"
slipped and fell did not permit an inference that the substance had
been on the stairway so long before the accident that the proprietor
of the hotel was negligent in failing to discover and remove it, although
he employed a man to sweep the stairway daily, or an inference that
the substance came upon the stairway due to negligence of the em-
ployees of the rendering company.

TWO ACTIONS OF TORT.   Writs in the Superior Court dated
March 26, 1953.

The actions were tried together before *Sullivan*, J.

*Charles F. Choate*, for the plaintiff.

*Daniel A. Lynch*, for the defendants.

COUNIHAN, J.   These are actions of tort, one against the
Hotel Commander, Inc., hereinafter called the Hotel, and
the other against the Hinckley Rendering Company, here-
inafter called Hinckley.   They arose out of an accident
which occurred on July 13, 1951, by reason of the presence
of a foreign substance on a stairway of the Hotel, which
allegedly was due to the negligence of one or both of the
defendants.

[1] The companion case is by the same plaintiff against Hinckley Rendering
Company.

The actions were tried together and come here upon a consolidated bill of exceptions which was based upon the allowance of a motion for a directed verdict by each defendant and on exceptions to the exclusion of evidence offered by the plaintiff. There was no error.

The evidence most favorable to the plaintiff in both cases was as follows: The plaintiff on the day of the accident was engaged in delivering fruit and vegetables to the Hotel. Employees of Hinckley shortly before the accident had collected some grease and bones from the basement of the Hotel which they had carried in a steel bucket or barrel up over the stairway to a truck which was standing in a driveway in the rear of the Hotel.

When the plaintiff arrived at the Hotel he noticed the Hinckley truck standing in the rear of the driveway. That truck soon pulled out and the plaintiff backed his truck in over the driveway to the rear entrance to the Hotel. From the rear entrance there was an outside, open and uncovered stairway which led to the kitchen door. There were about twenty-five to thirty steps on the stairway which were made of concrete with corrugated steel on that part of the step on which one walked. On the right hand side of the stairway there was a board slide about ten to twelve inches wide. The plaintiff moved the merchandise he was to deliver to the tailboard of his truck. He then took off a box of grapefruit which weighed seventy-five to ninety pounds. He put the box on his shoulder and proceeded to walk down the stairway. As he started down he could see nothing on the steps. When he was half way down he stepped on "some slippery subject and slipped down, fell . . . down the stairs and landed on my left side." He then noticed a smudge on the ball of one of his shoes about the size of a silver dollar. "It was brown and very oily." He got up, and since the kitchen door was always locked he rang the kitchen bell, and he was admitted and delivered the grapefruit. He then proceeded on outside and up the stairs to complete his deliveries. When about half way up he noticed a smudge on the seventh or eighth step. It was "round about the size of a silver dollar

in shape and brown and oily." The plaintiff testified that there were many fallen leaves on the sides of all of the steps.

We first consider the action against the Hotel. No issue is raised as to its duty to the plaintiff who admittedly was a business invitee. Assuming for the purpose of this case that there was a foreign substance on one of the steps, "[t]here was no evidence as to how the substance happened to be upon the step, much less that it was placed there by anyone for whose conduct the defendant was responsible. . . . There likewise was nothing to show that it was seen by, or was in plain view of, any employee of the defendant. . . . Direct evidence was lacking as to the length of time that the substance had been where it was." *Foley* v. *Hotel Touraine Co.* 326 Mass. 742, 743. *Kelleher* v. *Dini's, Inc.* 331 Mass. 217, 218–219.

It is plain that the evidence was not sufficient to permit the jury to infer that the substance had been on the step for such a length of time that it should have been discovered and removed by the defendant. *Newell* v. *Wm. Filene's Sons Co.* 296 Mass. 489, 490. Compare *Gallagher* v. *Stop & Shop, Inc.* 332 Mass. 560, 563.

It is true that the Hotel employed a man whose duty among other things was to sweep the stairs daily, but he had no fixed time to do that work and it well may be that he did not do it that day until after the accident.

The action against Hinckley has even less merit than that against the Hotel for it is plain that it was based purely on surmise or conjecture. There was no direct evidence from any source from which it could be inferred that the foreign substance came to be there due to the negligence of any employee of Hinckley. *Sweatland* v. *Springfield Public Market, Inc.* 247 Mass. 268, 269–270. See *Rosenthal* v. *Central Garage of Lynn, Inc.* 279 Mass. 574, 576.

It is important to consider that the stairway upon which the plaintiff fell was an outside, open and uncovered one so that the substance on the step might have been deposited there without the intervention of any human agency. The presence of fallen leaves on all of the steps indicates that the

substance may have gotten there in the same manner in which the leaves did or it might even have come from the leaves.

There is no merit in the evidential exceptions for, even if such evidence were admissible, it would have added nothing by way of evidence which we hold is necessary to establish liability in cases of this kind.

*Exceptions overruled.*