Doleva *v.* Tedeschi's Super Market, Inc.

━━━━━

MARY DOLEVA & others *vs.* TEDESCHI'S SUPER
MARKET, INC.
(and a companion case[1]).

Plymouth. April 5, 1962. — June 12, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence,* Metal cylinder, Store, One owning or controlling real estate. *Agency,* What constitutes. *Practice, Civil,* New trial.

At the trial of an action against the operator of a display booth in an area belonging and next to a supermarket having a "grand opening" to which the plaintiffs were invited and against the proprietor of the market to recover for injuries sustained by the plaintiffs when a metal cylindrical tank used to blow up balloons tipped over and struck them, evidence did not warrant findings that that tank or the place where it fell was under the control of the operator of the display booth before, or at the time of, the accident, or that one, characterized by a witness as "a man from the market," who had blown up balloons and left the tank standing, was a person for whose conduct the proprietor of the market was responsible, or that the proprietor knew or should have known that the tank was in a position or was being handled in a manner likely to

[1] Mary Doleva & others *vs.* Halpern-Abelson, Inc.

cause injury to invitees; and verdicts in favor of both defendants were
properly directed.   [542–543]

There was no abuse of discretion in the denial of a motion for a new trial
of an action against a corporation an executive of which had testified
that a set of the defendant's answers to the plaintiff's interrogatories,
purportedly signed by him, were not signed by him, where the defend-
ant's counsel stipulated at the trial "that the answers filed in court to
all interrogatories directed to it were those of the defendant."  [543]

Tort against Tedeschi's Super Market, Inc., and Hal-
pern-Abelson, Inc.   Writ in the Third District Court of
Plymouth dated March 10, 1958.

Upon removal by one defendant, and subsequent transfer
of the case against the other defendant, to the Superior
Court, the cases were tried before *Gourdin,* J.

*Mario P. Alfieri (David W. Walsh* with him) for the
plaintiffs.

*Robert W. Bramley* for Tedeschi's Super Market, Inc.

*Charles A. Young, II,* for Halpern-Abelson, Inc., sub-
mitted a brief.

Kirk, J.   The plaintiff mother and her minor son were
injured by the tipping over of a metal cylindrical tank on
the premises of the defendant supermarket (Tedeschi's).
The mother and the son seek damages for personal injuries
based on the alleged negligence of Tedeschi's.   The plain-
tiff father seeks consequential damages.   Three similar
counts were alleged against the defendant Halpern-Abel-
son, Inc. (Abelson), which operated a display booth on
Tedeschi's premises.   At the close of the evidence, the
judge on motion directed verdicts for the defendants on all
counts.   Exceptions to the judge's order and to his subse-
quent denial of the plaintiffs' motions for a new trial bring
the case to us.

We consider the evidence in the light most favorable to
the plaintiffs.   *Howes* v. *Kelman,* 326 Mass. 696, 697.   On
August 13, 1957, Tedeschi's held a "grand opening" of its
store in the Plymouth-Kingston area, under the general
supervision of one Wallace, an executive of the com-
pany who was responsible for all promotional activities in
Tedeschi's chain of stores.   Dealers were invited to set up

display booths on the black topped parking area next to the store building. There was no definite assignment of areas to particular dealers. The whole area was assigned to a general group. The public, by Tedeschi's advertisement, was invited to visit the displays within the area. Thousands of people came. There was a merry-go-round for children. Abelson, a food broker, set up a location in the area where, from a standing helium tank forty inches high, its representative blew up balloons advertising a brand of pickles. There were also in the general area compressed air tanks four feet tall or taller and ten inches in diameter.

The plaintiff mother testified that while "walking along the side of the store . . . she passed the first display booth and glancing to her left saw a metal tank about 4½ feet high standing completely unattended and without a rope or anything separating it from the public . . . . She turned to her right to look for her children. Her 8 year old son John and 7 year old Larry . . . were immediately behind her. She was not holding anyone by the hand. At that instant she was struck." She demonstrated "how the top of the tank . . . struck her in the low back while the nozzle part struck her in the kidney area; and how the tank was then deflected to her right where it struck the two boys."

Joseph Halpern, the representative of Abelson, testified that before the accident he was watching a merry-go-round; that "a man from the market came out there and picked up that tank"; that "he blew up half a dozen balloons . . . for the kids"; and that "[w]hen he got through, he left the tank standing and I made a remark to him, I said, 'George . . . it's dangerous; that tank is going to fall and kill somebody,' and before I got through talking to him, sure enough, the woman went by with a kid. And the kid, you see, . . . just went by the tank and pushed the tank over, and the tank fell, because the tank was a little slanting —." George "ran away . . . very far." Halpern testified further that he had seen the man he called "George" before at the opening of Tedeschi's store in Nantasket; that on that occasion "George" was distributing balloons.

Verdicts were properly directed in favor of the defendant Abelson. There is nothing which remotely connects Abelson with the accident other than the fact that Halpern was a witness to it. There was no evidence competent against Abelson that either the particular tank which fell or the place where it fell was under the control of Abelson before, or at the time of, the accident.[2]

Nor do we think that the evidence was sufficient to take the case to the jury against Tedeschi's. There is no evidence or basis for an inference that prior to the event Tedeschi's knew, or in the exercise of reasonable care should have known, that the tank which caused the injury was left, even momentarily, in a position involving risk of injury to others. The bare characterization by Halpern that ''George'' was ''a man from the market'' whom he had seen at the opening of Tedeschi's store at Nantasket would not warrant a finding that ''George'' was a person for whose conduct Tedeschi's was legally responsible. If believed, it tended to establish a relationship to Tedeschi's that was no closer than Halpern's.

There were read into evidence (against Tedeschi's only) certain interrogatories propounded to and answered by Tedeschi's, one of which was as follows: ''Prior to . . . [the time of the accident] was the metal cylinder that caused the injuries alleged in the declaration, maintained or allowed to stand in an upright or vertical position, without fixed support? Answer: Yes.''

The quoted interrogatory and the answer thereto do not aid the plaintiffs. It was one of several interrogatories and answers read into evidence by the plaintiffs, who are bound by them, in the absence of evidence more favorable to them. *Luoma* v. *Socony-Vacuum Oil Co. Inc.* 332 Mass. 101, 104, and cases collected. These answers and further answers offered by the plaintiffs show that whatever knowl-

---

[2] To the contrary, all the evidence properly admissible against Abelson was to the effect that the tank which fell was four and one-half feet, or four and one-half to five feet tall, whereas the tank which Halpern (Abelson's representative) had been using was stipulated to be forty inches tall.

edge Tedeschi's had as to the manner in which the accident happened was acquired by Tedeschi's after the accident; that the tank which injured the plaintiffs was a helium tank; that there was only one helium tank on Tedeschi's premises; and that the one helium tank was Abelson's. Halpern's testimony did contradict Tedeschi's answers to interrogatories as to the identity of the tank which struck the plaintiffs. This contradiction, however, does not supply the evidence necessary to recovery that the tank was under the control of one for whose conduct Tedeschi's was legally responsible. The permitted use of Tedeschi's premises by its suppliers would not alone give rise to the doctrine of respondeat superior. See *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 141–145. Moreover, the record, as already stated, is barren of evidence that prior to the injury Tedeschi's knew or had reason to know that the tank was in a position or was being handled in a manner likely to cause injury to invitees. We see no reason to take the case on its facts out of the general rule applied to business invitees. *Gallagher* v. *Stop & Shop, Inc.* 332 Mass. 560. *Deagle* v. *Great Atl. & Pac. Tea Co.* 343 Mass. 263. There being no evidence of negligence properly imputable to Tedeschi's, there can be no recovery against it. It follows that there was no error in granting the motion for directed verdicts.

The motions for a new trial, addressed to the judge's discretion, were based on the fact that Wallace, called by the plaintiffs to the stand apparently early in the trial, had testified that the first set of Tedeschi's answers to the plaintiffs' interrogatories, purportedly signed by him, were not signed by him. Counsel for Tedeschi's, however, stipulated at the trial "that the answers filed in court to all interrogatories directed to it were those of the defendant Tedeschi's Super Market, Inc." In these circumstances, we perceive no abuse of discretion by the judge in the denial of the motions for a new trial.

*Exceptions overruled.*