*Northern District*
#6321

## MARY CHEVALIER

v.

## FIRST NATIONAL STORES, INC.

*Present:* Brooks, P.J., Connolly, Yesley, J.J.
Case tried to *Troy, J.* in the Municipal Court of the Dorchester District   R-2048

Brooks, P.J.   *This is an action of tort* to recover for injuries received by plaintiff as the result of a fall on defendant's premises. Defendant answered by way of general denial, contributory negligence and assumption of risk.

*There was evidence that* plaintiff entered defendant's store where she remained for about half an hour, purchased and paid for some merchandise, then left. At that time she observed nothing on the floor where she subsequently fell.

Plaintiff returned to the store to purchase ice cream. Having made the purchase, she started to walk toward the cashier and while so doing, she slipped and fell at a point approximately 6 to 8 feet from the cashier and within view of the manager's office. After she got up she noticed on the floor a "beige colored greasy object". It was dirty and grimy looking and about the size of half a cake of Ivory soap, guest size.

Defendant duly filed the following requests for rulings:

1. The evidence does not warrant a finding that the defendant, its agents or servants were negligent.
2. The evidence does not warrant a finding other than that the negligence of the plaintiff contributed in whole or in part to cause the alleged injuries and damage.
3. The evidence does not warrant a finding that the negligence of the defendant proximately caused the alleged injuries and damage.
4. As a matter of law the defendant breached no legal duty owed by it to the plaintiff.

The judge denied the defendant's requests ## 1, 2, 3, 4 and found ". . .as a fact that the plaintiff being in the exercise of due care and rightfully on the premises was caused injury by the negligence of the defendant" and found for the plaintiff in the amount of $2275.

Defendant claimed to be aggrieved by the denial of its requests for rulings numbered 1, 2, 3 and 4 and the finding for plaintiff.

The issue is comparatively simple: Was the trial judge wrong in finding defendant negligent on the evidence presented? That evidence, uncontradicted, was that plaintiff stepped on a substance about the size of half a cake of Ivory soap, "guest size". That is to say, about 2 inches by 3 inches. The substance was beige in color, greasy in character, and grimy in appearance. Its location was 6 to 8 feet from the cashier and in sight of the manager's office.

The fundamental law applicable to this

type of case is stated in *White* v. *Mugar,* 280 Mass. 73, 75:

> "The defendant owed to customers a duty to keep the premises reasonably safe for their use. He, however, is not an insurer of safety where without action for which he is responsible, a dangerous condition arises. The law allows him reasonable opportunity to become informed of the danger and to take the measures to remedy it. He is not liable in such a case unless he is negligent in failing to inform himself and to take the appropriate action."

Roughly speaking, there are four ways in which the plaintiff may offer evidence of defendant's negligence in such cases:

1. Plaintiff may offer direct evidence that the foreign substance was on the premises of defendant through an act of defendant or an act of a person for whom defendant is responsible.

2. Plaintiff may offer direct evidence that defendant had actual knowledge of the foreign substance on premises of defendant.

3. Plaintiff may offer direct evidence as to the length of time that the foreign substance has been on defendant's premises.

4. Plaintiff may offer direct evidence of the general appearance of the foreign substance and the fact that there was opportunity for discovery by defendant or his employees from which it could reasonably be found that defendant should have known of and re-

moved the foreign substance from the premises.

In the present instance, the situation comes, if at all, in the fourth category. There is no evidence that defendant or its agent actually knew of the foreign substance, nor is there any direct evidence as to the length of time that this substance was on the premises. It is essential, in other words, to establish this length of time by circumstantial evidence. The question, therefore, is whether the adjectives describing the appearance of the substance form adequate basis for assuming that the substance was on the floor long enough to have been seen by an employee of defendant, having in mind the proximity to the manager's office and to the cashier's location.

The matter is succinctly stated as follows in *Deagle* v. *Great Atlantic & Pacific Tea Co.*, 343 Mass. 263:

> "The length of time the law allows to the defendant for discovery and removal or warning of the dangerous condition is governed by the circumstances of each case. To a large extent, it depends upon the opportunity for discovery open to the defendant's employees by reason of their number and physical proximity to the condition in question and in general, the likelihood that they would become aware of the condition in the normal performance of their duties."

Turning to the precise description of the foreign substance, —the color was beige, the quality greasy, and the appearance grimy. A definition of beige is "wool colored", "quality of ladies' dresses". This adjective sheds no

light on the question how long the substance was on the floor. The characterization "greasy" merely indicates that a possibly dangerous substance was on the floor requiring prompt removal. Here again, the greasiness of the substance throws no light on the length of time it has been on the floor.

■ Coming now to the remaining description, — "grimy" can be assumed to be synonymous with "dirty". This particular characterization figures in several cases which have been the subject of judicial decision. For example in *Fine* v. *Woolworth Co.*, 343 Mass. 328, 329 the foreign substance was described as "dirty" and "grimy". In *Devery* v. *Stop & Shop, Inc.*, 342 Mass. 777 a paper bag upon which plaintiff slipped was described as "dirty" and that it had had many foot prints on it. In *Maguire* v. *Wm. Filene's Sons Co.*, 342 Mass. 776 again a paper bag, which it appears caused the accident, was described as "dirty" and "grayish". In *O'Neill* v. *Boston Elevated Railway Co.*, 248 Mass. 362 the substance upon which plaintiff slipped was described as a "dirty" piece of apple core. This, the court said, was no evidence of length of time the apple core had been on the aisle floor.

In analogous cases, for example *Caro* v. *Woolworth Co.*, 342 Mass. 155, the substance was described as caked. The court said this was insufficient upon which to predicate length

of time. In *Foley* v. *Hotel Touraine Co.*, 326 Mass. 742, 746 the substance looked like "tar" and was caked on the edges. In *Uchman* v. *The Polish National Home, Inc.*, 330 Mass. 563 the foreign substance was a black banana peel.

In all the above cases, some of which went to the jury, the Supreme Court held that the evidence was insufficient to determine the length of existence of this foreign substance on defendant's premises. The whole subject of "fall-out cases" has been carefully and exhaustively studied in the March and September numbers of the Massachusetts Law Quarterly for the year 1962.

The location of the substance 6 to 8 feet from the cashier does not signify too much without knowing whether the cashier was facing the locus. Plaintiff, for all we know, may have been approaching the cashier from the rear, similarly as to the locus being in view of the manager's office. That is not helpful unless there is evidence that the manager was there and there is no such evidence.

Perhaps the case of this type most frequently cited for plaintiff is *Gallagher* v. *Stop & Shop, Inc.*, 332 Mass. 560 in which plaintiff slipped on "messy, sloppy dirty ice cream all over the place". The Supreme Court held that "some appreciable time must have elapsed also for the ice cream to have got into the condition it was in after the accident as described by the plaintiff". Furthermore, distinguishing that

case from the case before us, three cashiers were stationed in the immediate vicinity of the accident whose duties involved their looking frequently in the direction of the location of the accident. The proximity of the locus to the station of an employee is, of course, relevant. Generally speaking, the closer it is to the accident the more relevant it is. However, in all cases the time element is still vital.

In view of the cases cited, it seems clear to us that the trial court's finding of negligence on the part of defendant was unwarranted and that the denial of defendant's Requests for Rulings 1, 3, and 4 was erroneous.

**Finding for plaintiff vacated.**

**Finding for defendant to be entered.**

MARTIN L. ARONSON, ESQ.
for Plaintiff

WILLIAM C. GARDINER, ESQ.
for Defendant