*Southern District*
No. 39775

**MARY A. ANGELLIS**
and
**PHILIP ANGELLIS**

v.

**STOP & SHOP, INC.**

Argued:———1966    Decided:———1966

*Present:* Nash, C.J., Cox, Murphy, J.J.

Case tried to *Tamkin, J.* in the Second District Court of Plymouth    No. 39775

Cox, J.  In this action of tort Mary A. Angellis seeks to recover damages for an injury which she alleges was caused by the defendant's negligence in maintaining a display of can goods as a result of which a can of tomato puree fell upon her foot. There is a count by her husband for consequential damages.

There was a finding for Mrs. Angellis in the sum of $1,400.00 and for her husband in the sum of $42.00.

The defendant claims to be aggrieved by the denial of its requested rulings that the evidence does not warrant a finding that the defendant was negligent nor a finding for the plaintiffs. A requested ruling that the evidence warranted

a finding of contributory negligence on the plaintiff's part was waived.

The evidence is not disputed.

The defendant's store is a discount type operation. This was known to Mrs. Angellis. On March 25, 1965 she went to the defendant's store in the Hingham Shopping Plaza to purchase a case of tomato puree. As was her custom and as on previous occasions she asked a store clerk for a full case of tomato puree. She was told that no full cases were available. She was then directed to the display of tomato puree and was told to take two trays, equivalent to a case of twenty-four cans. It is exceptional for a customer to purchase a full case or tray.

The display of cans of tomato puree was situated at the end of a shelf counter at the front of the store. It consisted of tier upon tier of cans built up from the floor. Between most of the tiers was a cardboard tray, each tray containing twelve cans. Each can weighed one pound twelve ounces. The trays were fashioned by cutting the cardboard containers so as to leave a rim or edge one inch high around the cardboard bottom. This method of display is known in the trade as a tray pack. The purpose of tray packing is efficiency and expediency in merchandising as well as stability of the display for the safety of customers. It tends to contain the cans in position.

Tray packing is used throughout the de-

fendant's store. As needed, an employee re-stacks the display. There was testimony that it was not normal practice to put a cardboard separator between every tier, but, if trays were available they were used. Because some containers are used in setting off the display for merchandising purposes there were not enough trays to place between each and every tier. The report is silent as to trays which may become available from the sale of cans or from other sources. Three photographs of the display, which were in evidence, have been examined by us. They show a number of trays in each tier and the display about twelve tiers high.

On the day in question Mrs. Angellis went as directed to the display of tomato puree. She removed a tray from a tier at chest level and placed it in her carrier. It weighed about twenty pounds. She then took hold of the second tray and as she was removing it a can from the third tier fell and injured her right foot. She had not seen that there was no cardboard separator or tray between the third and fourth tiers from the top. That she was in the exercise of due care is not disputed.

The justice specially found that "The defendant was negligent in failing to use reasonable care in keeping the display of tomato puree in a safe condition, that is: the defendant failed to place the cans in a cardboard tray on the level from which the can fell and struck the plaintiff."

■ The legal duty which the defendant owed the plaintiff as a business invitee "was to use reasonable care to keep in a safe condition that part of the premises to which she was invited or at least to warn her of dangers not known to her or obvious to a person of ordinary intelligence, which were either known or should have been known to the defendant in the exercise of reasonable care." *Rossley* v. *S. S. Kresge Co.*, 339 Mass. 654, 656. See also *Letiecq* v. *Denholm & McKay Co.*, 328 Mass. 120. *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 203. This duty extended to the display of tomato puree to which Mrs. Angellis was directed to help herself. It required the defendant to use ordinary care and diligence to keep the display "in a reasonably safe condition, having regard to its construction, the purpose for which it was arranged, and the customary conduct of the defendant's invitees who made use of it." *Brooks* v. *Sears Roebuck & Co.*, 302 Mass. 184, 186. "What constitutes the required care and diligence is a question of fact. *Campbell* v. *Boston*, 189 Mass. 7, 10. Only where no view of the evidence could warrant a jury in finding the defendant negligent can it be held as a matter of law that the plaintiffs cannot recover. See, e.g., *Mudge* v. *Stop & Shop, Inc.*, 339 Mass. 763." The quotation is from *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 203-204. "Whether a case falls on one side of the line or the other is often difficult and some

of the cases cited above are so close that opinions may well differ.'' The words are those of Spalding, J. in *Letiecq* v. *Denholm & McKay Co.*, 328 Mass. 120, 122, in which, cases on both sides of the line are cited.

Conceding, in the case at bar, that opinions may well differ, we must therefore conclude that that of the justice was at least warranted. The case on its facts appears to be similar to cases involving articles in precarious balance, and is governed by them. In such cases findings of negligence have been sustained against the merchants or other persons responsible for the articles. In *Purdy* v. *McWhirr Co.*, 350 Mass. 769, packing boxes each three feet high, twenty-seven inches wide, three inches thick and weighing twenty-one pounds, which stood ''straight up and against the end'' of a two foot high display table fell on a passing customer. It was held that ''The jury could have found that leaving the cartons in a state of *precarious balance* was a negligent act which caused the injury.'' In *Navien* v. *Cohen*, 268 Mass. 427, a storekeeper was held liable for injuries resulting when a radio loud speaker weighing about five pounds and *improperly fastened* to its shelf was wind blown from its shelf and fell upon a business invitee. In *Ryder* v. *Robinson*, 329 Mass. 285, it was held that a section of a fence left in a state of *precarious balance* warranted a finding of negligence. In *Burke* v. *Jordan Marsh Co.*, 313 Mass. 119, eight

or ten of twenty rolls of rugs, six feet high, standing on end, fell and injured a customer. It was held that a finding was warranted that they had been left in an *insecure state* or that they were *stacked insecurely*. In *Hart* v. *M. S. Kelliher Co.*, 308 Mass. 213, the plaintiff was injured by several bags of cement which fell from a pile seven to eight feet high at the ends, twelve feet high in the center and unsafely piled. It was held that "A jury could find that the defendant knew or ought to have known that the *pile was insecure* and likely to fall, and should have warned the plaintiff of the danger of which, the jury could find, he was ignorant." In *Meehan* v. *Gordon*, 307 Mass. 59, 62-63, a vault door being installed stood *unsupported and unbraced*. The person unlocking the door was injured when it fell upon him. A finding of negligence was upheld. Due care was required either to make the door secure or warn of the danger. In *Dunbar* v. *Ferrera Bros. Inc.*, 306 Mass. 90, *careless replacement* of a "reaching stick" by an employee, or his carelessness in coming in contact with it causing it to fall and injure a customer's child, was held to warrant a finding of negligence in an action against the merchant. In *Carriere* v. *Merrick Lumber Co.*, 203 Mass. 322, 325, a *tier of lumber* nine feet high fell upon the plaintiff injuring him. An inference of the superintendent's negligence was held to be permissible.

■ We are mindful that some latitude must be allowed a storekeeper in the display of his goods, *Letiecq* v. *Denholm & McKay Co.,* 328 Mass. 120, 122, and that a storekeeper is not an insurer of safety, *Gallagher* v. *Stop & Shop, Inc.,* 332 Mass. 560, 563.

■ Nevertheless, on the strength of the cases which we have considered and cited, and by which we must be guided, we conclude that the finding was warranted that the defendant failed to exercise reasonable care in keeping and maintaining the display of cans of tomato puree in a safe condition or to warn Mrs. Angellis of the danger of which she was ignorant. The state of *precarious balance* in which some of the cans were found to have been stacked could be held to be a negligent act which caused the injury for which the defendant is responsible.

■ The result is not affected by the store manager's testimony that stacking cases is customary in super markets and that it was not normal practice to put a separator between every tier of cans. "Since due care is that degree of care which a man of ordinary prudence would use under the circumstances . . . the fact that a certain device or practice is in common use tends to show that its use is not negligent . . . But that fact is not conclusive of due care, for a large number of persons may be wanting in due care in their usual practices."

*Corthell* v. *Great Atlantic & Pacific Tea Co.,* 291 Mass. 242, 243-244.

In the light of what has been said there was no error in denying the defendant's requested rulings. The report should be dismissed.

CHRISTOPHER H. WORTHINGTON, of Boston
  *for the Plaintiff*
RALPH C. COPELAND, of Boston
  *for the Defendant*