Sosman, J.
Plaintiff Hilandia Neuta has brought the present action against defendants Massachusetts Bay Transportation Authority (MBTA) and the Fairview Cleaning Company (Fairview) complaining of injuries she sustained in a slip and fall caused by a foreign substance on the platform at the MBTA’s Central Square station. Defendants have moved for summary judgment on the ground that the slip and fall occurred so shortly after the foreign substance landed on the platform that they did not have a reasonable opportunity to remedy it prior to plaintiffs fall. For the following reasons, defendants’ motion is ALLOWED.
Facts
Viewed in the light most favorable to the plaintiff, the facts are as follows:
At approximately 7:00 p.m. on October 13, 1993, a woman and a young child passed through one of the turnstiles onto the platform of the MBTA’s Central Square station. Shortly after they passed through the turnstile, the child vomited onto the floor of the platform just inside the turnstile. The woman proceeded to wipe the child’s face off.
This incident was observed by Ms. Myrtle Howell, the MBTA employee in the Central Square token booth. Upon witnessing the child vomit, Howell called a dispatcher to report the spill and request that someone be sent to clean the platform. While Howell was on the phone to the dispatcher, and just seconds after the woman finished wiping off the sick child’s face, plaintiff Neuta came into the station, went through one of the turnstiles, and slipped on the vomit.
Howell estimated that only seconds elapsed between the time she saw the child vomiting and the time of plaintiffs fall. She testified that it took the woman accompanying the child “a few seconds” to wipe the child’s face off and that plaintiff Neuta came through the turnstile and fell “a few seconds” after that.[1]
From her vantage point in the token booth, Howell did not have any mechanism to turn off the turnstiles or prevent them from admitting passengers onto the platform. She had been instructed never to leave the booth while on duty but rather to call dispatch if she needed any assistance. She was on the phone to the dispatcher at the time plaintiff came through the turnstile and fell. About ten minutes later, another employee came to the station and cleaned up the spill. At no time was defendant Fairview, the contractor in charge of regular cleaning of the station, notified of the spill.
Discussion
One who owns or controls business premises for use by patrons has a duty to keep the premises in reasonably safe condition. With regard to foreign substances on the floor, the defendant owner’s negligence may be established by showing that the defendant caused the substance to be there or by showing that the substance was there for long enough such that the defendant should have known it was there and taken steps to remove it or warn patrons about it. See Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165, 166-67 (1973); Gallagher v. Stop & Shop, Inc., 332 Mass. 560, 563 (1955).
In the present case, defendant MBTA did not cause the substance to be on the platform. The MBTA is obviously not responsible for the fact that a child got sick while entering the platform area.
Defendant MBTA did have knowledge of the fact that the child’s vomit had landed on the floor, as the token booth attendant saw the incident happen. However, mere knowledge of a dangerous condition is not negligence unless there has followed a period of time within which defendant has failed to take appropriate action. The law allows not only a reasonable time to discover the foreign substance, but also allows defendant a reasonable time within which to take remedial steps.
Where, without action for which he is responsible, a dangerous condition arises, the law allows [the owner of business premises] reasonable opportunity to become informed of the danger and to take measures to remedy it. He is not liable, in such a case, unless he is negligent in failing to inform himself and to take appropriate action.
Gallagher, supra, 332 Mass. at 560, quoting Keenan v. E.M. Loew’s, Inc., 302 Mass. 309, 312 (1939) (emphasis added). As such, the MBTA can not be held liable in negligence unless it failed to remedy the condition within a “reasonable time” after Howell became aware of the vomit on the platform.
The few seconds to perhaps few minutes (see n.1, supra) between the child vomiting and plaintiffs slipping on the vomit did not give the MBTA a “reasonable opportunity” to remedy the situation. Upon notice of the spill, Howell immediately phoned her dispatcher to send someone to clean the spill. Howell was on the phone summoning that help at the very moment plaintiff slipped. There was not time for anyone to literally remove the vomit during the veiy brief interval that had elapsed.
Plaintiff suggests that it was negligent for Howell not to “warn” plaintiff of the vomit. However, Howell *264 was on the phone to dispatch before she even saw plaintiff. She was taking measures to remedy the situation in a fashion that was surely reasonable. She could not simultaneously talk to dispatch and call out a continuous warning to all patrons approaching the station, nor could she simultaneously call dispatch and (against orders) leave her booth to block the entry through the turnstiles. The law demands “reasonable” action in response to notice of a dangerous condition. It does not demand perfection, and it cannot demand the physically impossible. Plaintiffs theory of negligence — i.e., that Howell should have warned Neuta (and all other approaching passengers) of the danger — ■ would mean that Howell could not have even taken the time to call for a cleaning person to be sent to the station. Howell did not have a “reasonable opportunity” to do more than the reasonable measures she took in response to seeing the child vomit on the platform. As a matter of law, Howell’s response in summoning cleaning help was reasonable, and she was not negligent on account of her failure to take instantaneous and simultaneous additional steps to warn those passengers who were coming through the turnstiles at the precise moment she was on the phone to dispatch. Plaintiffs negligence theory would impose not only unreasonable demands on Howell and the MBTA but would require of them the physically impossible.
As to defendant Fairview, there is no evidence that Fairview had notice of the condition prior to plaintiffs fall, and Fairview obviously had no time to get to the station and clean up the spill prior to plaintiffs fall.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered for defendants.

 Plaintiff argues that Howell’s testimony can, in the light most favorable to plaintiff, support the inference that the elapsed time was as great as three to five minutes. Howell testified that from the time she “looks down” and “sees a train coming" (which presumably refers to “looking down” the train tunnel or could mean “looking down” at the signals in her booth) and the time a train ordinarily comes to a full stop in the station, a period of three to five minutes normally elapses. With regard to this particular incident, Howell was asked whether the train was “already in the station” at the time the child started to vomit, to which Howell replied, “No.” She was asked whether there was “a train yet in the station” at the time the woman cleaned off the child’s face, to which Howell also replied, “No.” However, at other points in her deposition, Howell testified that the train was “already in the station” and “already there" when the child stopped vomiting, and that the train came to a full stop while the child’s face was being cleaned off. Howell testified that the train was stopped, picking up and discharging passengers, as plaintiff came through the turnstile. Plaintiff suggests that Howell’s initial answers to the effect that the train was not yet “in the station” at the time the child was vomiting means that the train had not yet even appeared (either down the track or on her signals). Adding the allegedly customary three to five minutes for the train to stop in the station, plaintiff concludes that three to five minutes elapsed before plaintiff fell in the vomit. However, as phrased, the questions about whether the train was “in” the station when the child started to vomit and/or had his face cleaned did not clarify whether the questioner meant to ask if the train had even appeared in the station or whether he meant to ask if the train had stopped in the station. In light of Howell’s later explicit description that the train was in fact coming into the station at the time the child was vomiting, that it stopped shortly after the child’s face had been cleaned “a few seconds” later, and that only a matter of “a few seconds" more elapsed before plaintiff came through the turnstile, it would be an extremely strained interpretation of Howell’s testimony to infer that the actual time lapse was three to five minutes. The requirement that the evidence be viewed in the light “most favorable" to plaintiff does not require the court to interpret answers to ambiguous questions in ways that would controvert specific answers to clear and unambiguous questions. Moreover, as discussed below, whether the time lapse was a matter of seconds or a matter of three to five minutes, defendant MBTA did not have a “reasonable time” within which to remedy the situation prior to plaintiffs fall.