Coven, J.
This is an action in negligence to recover for personal injuries sustained in the collapse of a seat in the defendants movie theater. Judgment was entered for the plaintiffs. The defendantfiled this Dist/Mun. Cts. R A D. A, Rule 8C, appeal challenging the sufficiency of the evidence on the issue of liability and the propriety of the courts evidentiary rulings.
On May 29,1996, plaintiff Dr. Richard A Patti (“Patti”) suffered personal injuries when his seat collapsed during a movie presentation at the Showcase Cinemas of defendant National Amusement, Inc. (“National”) in Lawrence, Massachusetts. Patti and his wife, plaintiff Josephine Patti, went to National’s place of business to attend an afternoon movie and chose two seats on the left side of the theater, approximately eight to fourteen rows from the back. About thirty minutes into the film, Patti shifted his weight to change positions. His entire seat, base and unattached seat back, suddenly collapsed. In an attempt to break his fall, Patti grabbed the back of the seat in front of him and was able to reach a standing position without touching the ground. In the process of pulling himself up, Patti put considerable stress on his back and arms. He has experienced pain and restricted movement ever since despite undergoing years of treatment for his injuries. His medical bills exceeded $6,000.00. Mrs. Patti claimed a loss of consortium and a diminished quality of life due to her husband’s injuries caused by National’s Mure to inspect and maintain its theater properly in a safe condition for invitees.
After a trial without a jury, the judge found for the plaintiffs in the amount of $50,000.00,[2] concluding that the National’s negligence caused Dr. Patti’s permanent, debilitating injuries and adversely affected Mrs. Patti’s quality of life.[3]
*181 On this appeal, National claims that there were no signs that the particular seat in question might collapse which might have placed the theater on notice of a potential safety hazard, that it did not breach its duty of reasonable care owed to the plaintiffs and other business invitees, and that the judge erred in denying its Mass. R. Civ. R, Rule 41(b) (2), motions for involuntary dismissal filed at the close of the plaintiffs’ case and again at the conclusion of all of the trial evidence.[4]
1. To establish negligence, a causal connection must be established between a defendants failure to exercise the requisite degree of due care and the harm suffered by the plaintiff. Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978). The trial judge found that, as National was in exclusive control of the premises, it failed to meet the necessary standard of care owed to its patrons, and that this breach of duty proximately caused tiie plaintiff’s injuries. There was no error.
Massachusetts case law imposes on theater owners and managers a standard of reasonable care for the protection and safety of invitees. National owed its patrons “the general duty to use ordinary care and diligence to put and keep ... (its) theater in a reasonably safe condition, having regard to the construction of the place, character of the entertainment given and the customary conduct of persons attending.” Constantine v. Proven Pictures of Boston, Inc., 338 Mass. 463, 463-464 (1959). National thus had a duty to maintain its theater seats in a condition which would permit paying customers to watch an entire movie presentation comfortably and without incident.[5]
National argues that the duty of reasonable care does not require a theater owner to insure the safety of its patrons. Keenan v. E.M. Loew’s, Inc., 302 Mass. 309, 311 (1939). Relying on the obvious fact that the plaintiff could in no way have anticipated that his seat would collapse, National contends that because neither Patti, nor National’s employees, observed anything wrong with tiie seat in question, there must have been nothing wrong with it However, the trial judge’s findings indicate that National was well aware of numerous prior incidents of seats collapsing in its theaters and had failed to investigate the nature of these accidents and tiie cause of the problem.[6] Those findings satisfy tiie element of notice which National claims it lacked. As the Court stated in Keenan:
But it was its [the defendants] duty to use reasonable care to discover a concealed danger, if the danger in this case were concealed, [citation omitted] If, without action for which it is responsible, a dangerous condition arises, the law allows a defendant a reasonable opportunity to become informed of the danger and to take measures to remedy it It is not liable in such a case unless it is negligent in failing to inform itself and to take appropriate action.
*182 Id. at 311-312. See also Bell v. Dorchester Theatre Co., 314 Mass. 536, 537-538 (1943). Each individual case of seat failure need not be considered independently of prior incidents. Evidence of prior seat collapses warned National of the likely presence of hidden dangers in its theaters, but the company failed to look into the cause, either because of lax safety policies or a conscious decision to remain ignorant
2. National also argues that the trial judge erroneously relied on the doctrine of res ipsa loquitur in finding it liable for the plaintiffs injuries. National contends that the doctrine is no longer applied in Massachusetts and that the plaintiffs’ reference to Couris v. Casco Amusement Corp.,[7] 333 Mass. 740 (1956) is thus irrelevant While the trial judge did not rely exclusively on res ipsa loquitur, that doctrine has not lost its vitality and the reasoning of Courts was properly incorporated into his decision. Even in the absence of the reasonable inference permitted by res ipsa loquitur, the judge was warranted in finding that National’s lack of adequate policies and procedures regarding seat Mures constituted negligence and caused injuries to its patron, the plaintiff who had used the seat in a manner consistent with its intended purpose for movie viewing. The trial judge, as fect-finder, could reasonably infer that because National was in exclusive control of the theater’s inspection and maintenance and because National did not conduct an investigation into the precise cause of this or any prior seat collapse, National was responsible for this incident See Filosi v. Boston Woven Hose & Rubber Co., 214 Mass. 408, 410 (1913).
3. The trial judge’s exclusion of the testimony of National’s seating contractor, Jack O’Leary of Allstate Seating Company, was also proper under the circumstances.[8] While the general rule is that “all relevant evidence is admissible unless within an exclusionary rule,” Poirer v. Plymouth, 374 Mass. 206, 210 (1978), testimony may be excluded where its evidentiary value is outweighed by its prejudicial effect Green v. Richmond, 369 Mass. 47, 59-60 (1975). O’Leary’s testimony would have amounted to nothing more than pure speculation due to the fact that he never examined the broken seat himself. He did not examine the seat because National had it repaired immediately after the injury to the plaintiff and the completion of an Incident Report “As a matter of sound policy, [National] should not be permitted to intentionally or negligently destroy or dispose of such evidence, and then to [have an expert] substitute his or her own description of it” Natty v. Volkswagen of America, Inc., 405 Mass. 191, 198 (1989).
4. National further argues that the courts exclusion of WorldCom telephone bills documenting its alleged communications with Allstate Seating concerning this incident served no purpose other than to punish National for its prompt “repair” of the broken seat. The trial judge properly excluded the documents, however, on the grounds of hearsay and lack of foundation.[9] Moreover, National *183 ignores the issue of spoliation in arguing that it should not be penalized for having fixed the broken seat immediately after an Incident Report was filled out because such prompt repair is necessary to maintaining a successful business. The law surrounding spoliation dictates that “[s]anctions may be appropriate for the spoliation of evidence that occurs even before an action has been commenced, if a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action.” Kippenkan v. Chaulk Services, Inc., 428 Mass. 124, 127 (1998). See also Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 550 (2002).[10] As the judge noted herein, National’s quick fix eliminated any opportunity for the plaintiff to revisit the scene and examine the evidence thoroughly. The exclusion of the proposed telephone bills and payment ledger, even if they had been admissible, was appropriate given the reasonable inference drawn by the trial judge that National was well aware of the possibility of a lawsuit and wasted no time in destroying the evidence.
Judgment affirmed.
So ordered.

 The damages were awarded in a single lump sum. National has not appealed the lack of a separate assessment of damages on the claims of each of the plaintiffs.

 The trial judge determined: “(1) the Mure of the seat, which was solely in National’s control, is evidence of negligence; (2) National’s national claims manager was previously on notice that there had been multiple seat incidents in its theaters and had not chosen to investigate the causes or to take any steps to prevent future incidents that might cause harm to customers; (3) its local manager was also aware of seat problems and had taken no steps to investigate or to have the seating contractor investigate the causes of Mures to prevent future Mures; (4) National has offered no evidence of a company policy on regularly inspecting seats or investigating Mures; and (5) National’s actions in having the seatrepaired, if it was repaired, after being on notice a patron had received significant injuries as a result of a collapse, made it impossible to determine the precise basis for the Mure or whether or how it could have been prevented and so have prejudiced the plaintiffs’ ability to make their case.”

 National also charges error in the denial of its motion for summary judgment However, the denial of a summary judgment motion is not reviewable on appeal after a trial on the merits. Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 126 (1986); District Atty., Hampden v. 355 Publication, 35 Mass. App. Ct. 66, 67 (1993).

 A theater owner would not of course, be held liable for a breach of that duty in a situation where a plaintiff was injured due to his own misuse of a theater seat It is clear in the present case that Dr. Patti in no way contributed to the seat collapse which caused his injuries, as he did nothing more than shift his weight in his seat during a film presentation as any reasonable person might do.

 The trial judge found: “National seeks to use its sloth and inattention as shields against liability.... That is neither responsible, nor in my opinion, is it consistent with National’s legal duty as a business that invites patrons of all ages and physical conditions to use its facilities.”

 In Cauris, a bolt was found lying next to a theater seat which had collapsed, leading the Court to find that only the defendants negligence could have caused the plaintiffs injuries. Id. at 742. The Court specifically relied on res ipsa loquitur, stating that “the jury would be warranted in finding that the unexplained collapse of the seat in question while being used in a normal manner was due either to defective construction or to lack of repair, and that its unsafe condition was more likely attributable to negligence on the part of the defendant than to some other cause.” Id.

 O’Leary was not listed as one of National’s experts, but was called as a witness in the plaintiff’s case. After O’Leary speculated as to causation during National’s cross-examination of him, the plaintiff objected to parts of O’Leary’s testimony. The judge then excluded O’Leary’s speculations as to the cause of the seat failure.

 The bills were not part of National’s business records, and the computer-generated payment ledger was not produced under the supervision of Paul Murphy, the witness through whom National attempted to offer the record into evidence.

 In Fletcher, the Supreme Judicial Court declined to recognize the tort of intentional or negligent spoliation of evidence, but reaffirmed the trial court’s authority to impose appropriate sanctions where a finding of spoliation is made. The Court stated: “Where evidence has been destroyed or altered by persons who are parties to the litigation, or by persons affiliated with a party (in particular, their expert witnesses), and another party’s ability to prosecute or defend the claim has been prejudiced as a result, we have held that a judge may exclude evidence to remedy that unfairness.... In doing so, we have gone farther than other jurisdictions, many of which address spoliation merely by permitting an adverse inference against the party responsible for the spoliation. Thus, once ‘a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action,’ we have imposed a duty to preserve such evidence in the interests of fabness.
“Again, however, in recognizing such a duty, we simultaneously crafted the remedy for spoliation within the context of the underlying civil action. Sanctions in that action are addressed to the precise unfabness that would otherwise result Thus, for example, an experts testimony (or portions thereof) may be excluded so that the expert would not have the unfab advantage of posing as ‘the only expert with first-hand knowledge’ of the item....
“Not only do we impose the sanction of excluding testimony, but we do so recognizing that such exclusion of testimony may be dispositive of the ultimate merits of the case, thereby imposing the ultimate sanction on the party responsible for the spoliation [citations omitted].”Id. at 550.