MYRTLE LASKEY *vs.* FIRST NATIONAL STORES INC.

Middlesex.    December 8, 1944. — February 5, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & SPALDING, JJ.

*Negligence,* Store, Slippery substance.

A finding of negligence of the proprietor of a store toward a customer was warranted on evidence that the customer sustained injuries in a fall on the store's floor which for over a month had been treated by the proprietor or with his full knowledge with a certain substance; that the substance had been applied so recently before the customer

fell and was of such a nature that on the occasion in question, a rainy day, water dripping from umbrellas of customers on particular patches of the floor, on one of which the customer fell, had brought the substance to the surface as a "thick, greenish material," making those patches slippery; that the defendant knew of the qualities of the substance and on other rainy days had guarded against consequences thereof by use of sawdust, but that such precaution was not taken on the day in question; and that the effect of water on the substance would not be likely to be apparent to the customer.

TORT. Writ in the Superior Court dated January 5, 1942.

The case was tried before *Collins*, J.

*C. W. Spencer*, for the plaintiff.

*W. I. Badger, Jr.*, for the defendant.

QUA, J. On November 1, 1941, the plaintiff, a woman seventy-two years of age, while a customer in the defendant's store for the purpose of buying some meat, slipped upon the floor, fell and was injured. The only question worthy of serious consideration is whether there was any evidence for the jury of the defendant's negligence. After a verdict for the plaintiff, the judge entered a verdict for the defendant on leave reserved.

The substance of the evidence most favorable to the plaintiff was this: The plaintiff entered the well lighted store shortly after one o'clock in the afternoon. It was raining very hard and had been raining all day. When the plaintiff got half way through the store, her feet slipped out from under her. When she was able to stand again, she saw a spot with "an oily surface" wet with "oil" and rain. There were marks in it where her heels had skidded from under her. She did not see the spot until after the accident. The floor was "thick with oil and water," particularly where she fell. The water had brought the "oil" to the surface. "It was a thick, greenish material, or color." It was "greenish black." "The spot or patch was about two feet big." There were water and "oil" there. The entire floor had been "oiled." "It was a dark, oiled floor." A witness who had been in the store in the week before the accident could see that the entire floor had been "oiled." The witness had observed that there was "oil" on the floor

in September. There was "oil" on a white glove which she had dropped there. On the day of the accident there were patches of water where people's umbrellas had·dripped. Water was seen to drop from umbrellas and rubbers. That the floor was "oiled" was obvious to anyone looking at it. There was no sawdust "or other covering on the floor," and there were no warning signs.

The defendant's "meat manager" testified that the floor had not been oiled for ten years, "with the, exception of a compound that was used"; that "actual oil" had not been put on it for at least ten years; and that there was no oil on the·floor on the day of the accident. When asked whether it was not a fact that there was oil along the edge of the floor "at the present time" he answered that he could not say. He testified that when it rained they put sawdust on the floor; and that on any rainy day people come in with dripping clothes and umbrellas.

From this evidence the jury could find that at least for over a month the entire floor had been treated with some substance which the plaintiff's witnesses persisted in describing as oil, and that this had been done by the defendant or with its full knowledge. They could find that this substance, whether or not it was "actual oil," had been applied recently enough and, at least at the spot where the plaintiff fell, in such quantity, that water brought it to the surface as a "thick, greenish material." They could find that a substance which could produce that effect was likely to make the floor slippery at particular places where water accumulated upon it. They could reasonably infer that the defendant was familiar with the properties of this substance; that the defendant knew that on rainy ·days water would be brought in by customers and might make the floor especially slippery in patches where it accumulated; and that on such days the defendant habitually recognized this condition and guarded against it by applications of sawdust, but that it did not do so at the time and place of the accident. The jury could further find that the effect of water upon such a substance would not be fully apparent to a customer from such examination of the floor

as he would be likely to make while intent upon the business that brought him to the store.

We think that this case differs on the one hand from cases where the condition complained of is nothing more than the smoothness of a floor which is finished in some well known manner with varnish or wax properly applied, as in *Kitchen* v. *Women's City Club of Boston,* 267 Mass. 229, *Crone* v. *Jordan Marsh Co.* 269 Mass. 289, *Peterson* v. *Empire Clothing Co.* 293 Mass. 447, *McGuire* v. *Valley Arena Inc.* 299 Mass. 351, and *Kay* v. *Audet,* 306 Mass. 337 (but compare *Ventromile* v. *Malden Electric Co., ante,* 132, 135–136, where there was evidence that wax had been improperly applied), and on the other hand from cases where the condition complained of consisted of nothing more than wet spots with which everyone is familiar and which ordinary care could not have prevented in places of public resort on rainy days, as in *Tariff* v. *S. S. Kresge Co.* 299 Mass. 129, and *Moors* v. *Boston Elevated Railway,* 305 Mass. 81. The case seems to us to fall within the authority of *Blake* v. *Great Atlantic & Pacific Tea Co.* 266 Mass. 12, where "a considerable surface" of the floor had "become saturated with oil through the application of a thick floor oil during many months of the year" and moisture had been brought in by customers on a rainy day, and where this court said, at page 13, "The judge could not decide, as matter of law, that the condition was momentary, or inevitable, or so small in extent as easily to escape notice, or that a reasonably prudent man, knowing the condition of the wood and the usual result of inclement weather in causing moisture to be brought into the store, would not be negligent in failing to guard customers from slipping." In *Trottier* v. *Neisner Brothers, Inc.* 284 Mass. 336, the plaintiff was allowed to recover for an injury received from a fall on a floor which was slippery from oil in certain places, but not obviously so, and in *Correira* v. *Atlantic Amusement Co. Inc.* 302 Mass. 81, the plaintiff recovered for an injury received from falling upon a floor of hard rubber tiling which was slippery because water had been allowed to collect upon it.

The defendant relies strongly upon the recent decision of *Wetmore* v. *McLellan Stores Co.* 315 Mass. 443. But the ground of that decision was that "what . . . [the plaintiff] described as oil at the point where she fell" was "not a description of anything disclosed by the testimony to have been put on to the floor by the defendant" (page 445), and there was no evidence as to how long the condition had existed. Moreover, in that case there was no evidence that any accumulation of water had combined with whatever was on the floor to produce a condition of slipperiness at the particular spot where the plaintiff fell comparable to that which could have been found in the case at bar.

The governing principles are clear, even if their application to particular cases may involve delicate distinctions. We think that this was a jury case.

The plaintiff's exceptions are sustained. The verdict for the defendant entered by the judge on leave reserved is set aside, and judgment is to be entered for the plaintiff on the verdict returned by the jury.

*So ordered.*