MARY M. WEXLER vs. STANETSKY MEMORIAL CHAPEL OF
BROOKLINE, INC.

Suffolk.    April 11, 1974. — January 7, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Negligence,* Funeral home, Slippery substance.

Evidence that the plaintiff, after entering the defendant's funeral
home on a snowy day and stepping off a small carpet just inside
the door, slipped and fell in a pool of muddy water on the marble
floor, that a half hour before she arrived a smaller pool of relative-
ly clear water, apparently tracked into the lobby by people enter-
ing the funeral home, had been observed at the same spot and
that an employee of the defendant was seen near it, did not war-
rant a finding of negligence on the part of the defendant. [750-
753]

. TORT.    Writ in the Superior Court dated February 22,
1971.

The action was tried before *Mitchell, J.*

*Robert L. Farrell (Philander S. Ratzkoff* with him) for
the defendant.

*Harvey M. Forman* for the plaintiff.

KEVILLE, J.    This is an action of tort in which the
plaintiff seeks to recover for personal injuries suffered
when she slipped and fell on the lobby floor of the
defendant's funeral home.    At the close of the plaintiff's
evidence the defendant rested and moved for a directed
verdict.    The trial judge denied this motion, and, after
the return of a verdict for the plaintiff, also denied the
defendant's motion for the entry of judgment under leave
reserved.    The case is here on the defendant's exceptions
to the denial of both motions.

The facts are summarized in their aspect most favor-
able to the plaintiff.    On December 22, 1970, at about
12:30 P.M., the plaintiff, aged seventy, arrived at the

defendant's funeral home in order to attend the funeral of a neighbor's father at 1:00 P.M. Snow had been falling for an hour or two. The plaintiff entered the funeral home lobby through a covered entranceway. She stepped upon a small carpet located just inside the door. She took one step off the carpet and fell. What has been variously described as a "puddle or pool of dirty water" and an area of "wetness" which was "between three and four feet in length and width" covered the marble floor at the spot where she fell.

A half hour before she arrived, a smaller pool of relatively clear water, apparently tracked into the lobby by people entering the funeral home, had been observed at the same spot. An employee of the defendant was seen near it. The area of wetness grew in size and became more muddy as a number of people entered the building in the half hour before the plaintiff arrived.

In our view this is a case in which "the transitory conditions of [the] premises, due to normal use in wet weather, according to ordinary experience could not in reason have been prevented." *Lanagan* v. *Jordan Marsh Co.* 324 Mass. 540, 542 (1949). See *Tariff* v. *S. S. Kresge Co.* 299 Mass. 129, 130 (1937); *Moors* v. *Boston Elev. Ry.* 305 Mass. 81, 82-83 (1940); *Policronis* v. *Jordan Marsh Co.* 333 Mass. 767 (1955); *Faulkner* v. *J. H. Corcoran & Co. Inc.* 342 Mass. 94, 95-96 (1961). Compare *Lowe* v. *National Shawmut Bank,* 363 Mass. 74, 77-78 (1973). There was no evidence to indicate that the water on the floor was more than "inevitably results from the tramping of many feet in such a place . . . under the conditions of weather then existing" (*Moors* v. *Boston Elev. Ry., supra,* at 82; *Faulkner* v. *J. H. Corcoran & Co. Inc., supra,* at 96), or that it was of unusual depth or extent (*Grace* v. *Jordan Marsh Co.* 317 Mass. 632, 633 [1945]). We can infer from the flatness of the floor, as shown in a picture of the lobby, that any deposit of water on it "must have been thin and perhaps not much more than a film." *Leary* v. *Jordan*

*Marsh Co.* 322 Mass. 309, 310 (1948). Contrast *Correira* v. *Atlantic Amusement Co. Inc.* 302 Mass. 81, 82 (1938). Also, there was no evidence that the floor, for any reason, became peculiarly slippery when wet (*Moors* v. *Boston Elev. Ry., supra; Faulkner* v. *J. H. Corcoran & Co. Inc., supra,* at 95; contrast *Correira* v. *Atlantic Amusement Co. Inc., supra*) and we cannot take judicial notice that a marble floor such as this one becomes dangerously slippery when wet. *Faulkner* v. *J. H. Corcoran & Co. Inc., supra,* at 95-96.

Since in the circumstances here disclosed, it would have been impractical to keep the lobby floor dry, our conclusion is not affected by the fact that here, unlike in *Tariff* v. *S. S. Kresge Co., supra,* and *Moors* v. *Boston Elev. Ry., supra,* there was evidence that water had been on the lobby floor for at least a half hour. See *Policronis* v. *Jordan Marsh Co., supra.*

We have not been directed to nor have we found authority to support the plaintiff's contention that the owner of a funeral home, whose invitees may arrive intermittently, should for that reason be held to a higher standard of care than, for example, that required to be exercised by a public transportation system or a department store toward its invitees. Such cases as *Moors* v. *Boston Elev. Ry., supra,* and *Faulkner* v. *J. H. Corcoran & Co. Inc., supra,* are not distinguishable on that ground. The cases cited by the plaintiff involving falls on snow or ice, including *Watts* v. *Rhodes,* 325 Mass. 697 (1950), and *Thornton* v. *First Natl. Stores, Inc.* 340 Mass. 222, 224 (1960), are distinguishable from the present case. See *Lanagan* v. *Jordan Marsh Co.* 324 Mass. at 541-542. To the extent that cases cited by the plaintiff from other jurisdictions lead toward a result different from that reached by us, we do not follow them.[1]

---

[1] *Powell* v. *Deifells, Inc.* 251 N. C. 596, 600 (1960), and *Sommese* v. *Maling Bros. Inc.* 65 Ill. App. 2d 223, 228, 237 (1965), are distinguishable in that in those cases there was evidence that the surface on

Finally, the plaintiff asserts that a funeral home operator should be expected to exercise the care necessary to prevent harm to a person coming on his premises so affected by grief as to be unable to exercise proper care for her own safety. See Annot. 14 A. L. R. 3d 629, 631 (1967). Compare *Kane* v. *Fields Corner Grille, Inc.* 341 Mass. 640, 642-643 (1961); *Mounsey* v. *Ellard,* 363 Mass. 693, 707, 709 (1973); *Goldstein* v. *Gontarz,* 364 Mass. 800, 805-807 (1974). This is not such a case; there was no evidence that this plaintiff was so affected by grief at the death of her neighbor's father as to be unable to exercise normal care for her own safety. The exceptions are sustained and judgment is to be entered for the defendant.

*So ordered.*

---

which the plaintiff fell was unusually slippery when wet. In *McVeigh* v. *McCullough,* 96 R.I. 412, 417, 419 (1963), there was evidence that an unusual amount of water had gathered in a depression in the surface on which the plaintiff fell making it slippery. The fourth case is more difficult to distinguish, but even there the evidence tended to show that in wet weather the defendant usually placed an absorbent mat on the surface on which the plaintiff fell, but that it failed to do so on the day of the fall. *Allison* v. *Blount Natl. Bank,* 54 Tenn. App. 359 (1965).