2 Mass. App. Ct. 750 (1975)
321 N.E.2d 686
MARY M. WEXLER
vs.
STANETSKY MEMORIAL CHAPEL OF BROOKLINE, INC.
Appeals Court of Massachusetts, Suffolk.
April 11, 1974.
January 7, 1975.
Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.
Robert L. Farrell (Philander S. Ratzkoff with him) for the defendant.
Harvey M. Forman for the plaintiff.
KEVILLE, J.
This is an action of tort in which the plaintiff seeks to recover for personal injuries suffered when she slipped and fell on the lobby floor of the defendant's funeral home. At the close of the plaintiff's evidence the defendant rested and moved for a directed verdict. The trial judge denied this motion, and, after the return of a verdict for the plaintiff, also denied the defendant's motion for the entry of judgment under leave reserved. The case is here on the defendant's exceptions to the denial of both motions.
The facts are summarized in their aspect most favorable to the plaintiff. On December 22, 1970, at about 12:30 P.M., the plaintiff, aged seventy, arrived at the *751 defendant's funeral home in order to attend the funeral of a neighbor's father at 1:00 P.M. Snow had been falling for an hour or two. The plaintiff entered the funeral home lobby through a covered entranceway. She stepped upon a small carpet located just inside the door. She took one step off the carpet and fell. What has been variously described as a "puddle or pool of dirty water" and an area of "wetness" which was "between three and four feet in length and width" covered the marble floor at the spot where she fell.
A half hour before she arrived, a smaller pool of relatively clear water, apparently tracked into the lobby by people entering the funeral home, had been observed at the same spot. An employee of the defendant was seen near it. The area of wetness grew in size and became more muddy as a number of people entered the building in the half hour before the plaintiff arrived.
In our view this is a case in which "the transitory conditions of [the] premises, due to normal use in wet weather, according to ordinary experience could not in reason have been prevented." Lanagan v. Jordan Marsh Co. 324 Mass. 540, 542 (1949). See Tariff v. S.S. Kresge Co. 299 Mass. 129, 130 (1937); Moors v. Boston Elev. Ry. 305 Mass. 81, 82-83 (1940); Policronis v. Jordan Marsh Co. 333 Mass. 767 (1955); Faulkner v. J.H. Corcoran & Co. Inc. 342 Mass. 94, 95-96 (1961). Compare Lowe v. National Shawmut Bank, 363 Mass. 74, 77-78 (1973). There was no evidence to indicate that the water on the floor was more than "inevitably results from the tramping of many feet in such a place ... under the conditions of weather then existing" (Moors v. Boston Elev. Ry., supra, at 82; Faulkner v. J.H. Corcoran & Co. Inc., supra, at 96), or that it was of unusual depth or extent (Grace v. Jordan Marsh Co. 317 Mass. 632, 633 [1945]). We can infer from the flatness of the floor, as shown in a picture of the lobby, that any deposit of water on it "must have been thin and perhaps not much more than a film." Leary v. Jordan *752 Marsh Co. 322 Mass. 309, 310 (1948). Contrast Correira v. Atlantic Amusement Co. Inc. 302 Mass. 81, 82 (1938). Also, there was no evidence that the floor, for any reason, became peculiarly slippery when wet (Moors v. Boston Elev. Ry., supra; Faulkner v. J.H. Corcoran & Co. Inc., supra, at 95; contrast Correira v. Atlantic Amusement Co. Inc., supra) and we cannot take judicial notice that a marble floor such as this one becomes dangerously slippery when wet. Faulkner v. J.H. Corcoran & Co. Inc., supra, at 95-96.
Since in the circumstances here disclosed, it would have been impractical to keep the lobby floor dry, our conclusion is not affected by the fact that here, unlike in Tariff v. S.S. Kresge Co., supra, and Moors v. Boston Elev. Ry., supra, there was evidence that water had been on the lobby floor for at least a half hour. See Policronis v. Jordan Marsh Co., supra.
We have not been directed to nor have we found authority to support the plaintiff's contention that the owner of a funeral home, whose invitees may arrive intermittently, should for that reason be held to a higher standard of care than, for example, that required to be exercised by a public transportation system or a department store toward its invitees. Such cases as Moors v. Boston Elev. Ry., supra, and Faulkner v. J.H. Corcoran & Co. Inc., supra, are not distinguishable on that ground. The cases cited by the plaintiff involving falls on snow or ice, including Watts v. Rhodes, 325 Mass. 697 (1950), and Thornton v. First Natl. Stores, Inc. 340 Mass. 222, 224 (1960), are distinguishable from the present case. See Lanagan v. Jordan Marsh Co. 324 Mass. at 541-542. To the extent that cases cited by the plaintiff from other jurisdictions lead toward a result different from that reached by us, we do not follow them.[1]
*753 Finally, the plaintiff asserts that a funeral home operator should be expected to exercise the care necessary to prevent harm to a person coming on his premises so affected by grief as to be unable to exercise proper care for her own safety. See Annot. 14 A.L.R.3d 629, 631 (1967). Compare Kane v. Fields Corner Grille, Inc. 341 Mass. 640, 642-643 (1961); Mounsey v. Ellard, 363 Mass. 693, 707, 709 (1973); Goldstein v. Gontarz, 364 Mass. 800, 805-807 (1974). This is not such a case; there was no evidence that this plaintiff was so affected by grief at the death of her neighbor's father as to be unable to exercise normal care for her own safety. The exceptions are sustained and judgment is to be entered for the defendant.
So ordered.
NOTES
[1] Powell v. Deifells, Inc. 251 N.C. 596, 600 (1960), and Sommese v. Maling Bros. Inc. 65 Ill. App.2d 223, 228, 237 (1965), are distinguishable in that in those cases there was evidence that the surface on which the plaintiff fell was unusually slippery when wet. In McVeigh v. McCullough, 96 R.I. 412, 417, 419 (1963), there was evidence that an unusual amount of water had gathered in a depression in the surface on which the plaintiff fell making it slippery. The fourth case is more difficult to distinguish, but even there the evidence tended to show that in wet weather the defendant usually placed an absorbent mat on the surface on which the plaintiff fell, but that it failed to do so on the day of the fall. Allison v. Blount Natl. Bank, 54 Tenn. App. 359 (1965).