Lu, John T., J.
INTRODUCTION
The plaintiff, Sara Vaccaro (Vaccaro), allegedly slipped on a wet floor in front of the registration area on defendant University of Massachusetts Memorial Medical Center’s (the hospital) property and was injured. Vaccaro brings a claim for negligence against the hospital and the hospital moves for summary judgment. Finding that there are no material issues of fact as to the hospital’s lack of notice, and that the conditions of the premises, due to their use in wet weather, could not reasonably have been prevented, the court allows the motion for summary judgment.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the nonmoving party, Vaccaro, are as follows. Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990).
On April 11, 2003, Vaccaro had a doctor’s appointment at the hospital at about 4:30 p.m. When Vaccaro arrived, the registration area had many visitors with wet raincoats and umbrellas, and she stated “(i]t was pouring, pouring rain. Really, really heavy rain all day.”[1] Vaccaro entered the hospital through the lobby and proceeded to the registration area for processing.
Once the registration process was complete, Vaccaro turned away from the registration desk and began to walk towards the elevators. She slipped and fell on a portion of hard non-caipeted floor, which was wet. The floor was “very wet,” but there was “not a puddle of water like you would see in the street so that your shoe would get wet, but. . . little tiny puddles ...” There were no signs warning of a dangerous condition, nor were there cones posted to keep people away from the area.
After her fall, Vaccaro was assisted to her feet by two non-employees who were in the registration area and had seen her fall. Joanne Sheperd (Sheperd), supervisor for the patient access area, arrived. At her deposition, Sheperd testified that there were “little drips” of water on the floor and she questioned whether Vacarro had “wet herself’ because she felt the liquid “had a tint to it.” Sheperd also testified that she could not see any water on the floor, except for the area immediately surrounding the location where Vaccaro fell.
DISCUSSION
I. Standard of Review
Summary judgment shall be granted where the record establishes that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A fact is “material” if it is one that might affect the outcome of the suit under the applicable law. Mulvihill v. The Top-Flight Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). “Genuine” means that the evidence would permit a reasonable fact finder to resolve the point in favor of the nonmovant. Id.
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Tech. Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The opposing party cannot rest on mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The court will interpret all inferences in the light most favorable to the nonmoving party. Parent, 408 Mass. at 113.
II. Foreign Substances
Massachusetts recognizes that “[t]he obligation of one who controls business premises is to use due care to keep the premises provided for the use of its patrons in reasonably safe condition, or at least to warn them of any dangers that might arise from such use, which are not likely to be known to them, and of which the defendant knows or ought to know.” Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 166-67 (1973). When a visitor slips and falls on a foreign substance on the floor of a commercial establishment, the plaintiff can establish negligence by the proprietor through evidence that the proprietor’s employees caused the substance to be on the floor, that the proprietor’s employees had actual knowledge that the substance was on the floor, or that the foreign substance was present on the premises for such a length *74 of time that the defendant should have known about it. Id. at 167. Vaccaro does not allege, nor does the evidence support the inference that the defendant’s employees caused the condition or knew of the condition. In order for Vaccaro to establish negligence by the hospital, she must prove that the foreign substance was present on the hospital floor for such a length of time that hospital employees should have known about it.
The time element is rarely dispositive, however, negligence has been found when the organic substance’s level of decay established that the substance remained on the floor for an unusual length of time. Id. at 168-69; Anjou v. Boston Elev. Ry., 208 Mass. 273, 274 (1911) (inference could be drawn that dry, gritty, dirty, black, trampled banana peel was present for a long enough time so that defendant should have seen and removed it). When the nature of the substance is unknown or where the effect of time is not obvious, “no inference is warranted that the substance has been on the ground or floor long enough to have been seen and removed, despite the fact that it is described as dirty or black.” Oliveri, 363 Mass. at 169 (adherence of hard, dirty and unidentified substance to steps did not establish the time element); Leary v. Jordan Marsh Co., 322 Mass. 309, 310 (1948) (description of substance as three little pools of water the size of dinner plates with dried mud around the edge was insufficient to infer length of time on floor); Tariff v. S.S. Kresge Co., 299 Mass. 129, 130 (1937) (mere presence of water that was “very dirty and reddish in color and drying along its edges has no tendency to prove that it had been on the floor long enough so that the defendant should have seen it and mopped it up”).
In most instances, the length of time the defendant has to discover the foreign substance is assessed through determining the opportunity for discovery by defendant’s employees “by reason of their number, their physical proximity to the condition in question, and . . . the likelihood that they would become aware of the condition in the normal performance of their duties.” Oliveri, 363 Mass. at 167 (“while melting ice cream alone does not warrant an inference that enough time has passed . . . where the melting ice cream is near an exit door and several of the defendant’s employees work near the door, an inference of negligence is warranted”) (internal citations omitted). Length of time that the foreign substance was present assists the plaintiff to demonstrate negligence where there is “particularly favorable evidence for the plaintiff as to the location of duty stations of the defendant’s employees.” Id. at 170; see also, e.g. Foley v. F.W Woolworth Co., 293 Mass. 232, 234 (1936) (restaurant proprietor liable for customer’s slip and fall on stairway where the location of employees warranted an inference that the substance had been on the stairway long enough to have been known and removed before the accident); Gallagher v. Stop & Shop, Inc., 332 Mass. 560, 561 (1955) (store proprietor negligent when his employees did not discover and remove melting ice cream from the store’s exit because the ice cream could not have been where it was, because of its melting condition, without having been in the cashiers’ view).
There is no material issue of fact as to whether the hospital was negligent. The record is devoid' of any direct evidence as to the length of time the floor was wet. Circumstantial proof is also lacking. Since the composition of the substance is unknown, the description of the substance[2] alone is insufficient to show that the substance had been on the floor long enough to have been seen and removed. See Leary, 322 Mass. at 310 (description of substance as three little pools with dried mud at edges insufficient to infer length of time on floor); Tariff, 299 Mass. at 130 (presence of “very dirty and reddish” water drying along edges insufficient to prove substance had been on the floor long enough that the defendant should have seen it).
The proximity of the registration area to where Vaccaro slipped and fell also does not raise a material issue of fact. There is no evidence that the substance on which she slipped was visible to the hospital’s employees from their workstations or that it had been on the floor for such a length of time that it should have been discovered. Vaccaro argues that this case is similar to Gallagher, 332 Mass. at 560, and Foley, 293 Mass. at 232. These cases, however, are distinguishable because in both cases the length of time the substance remained on the floor and the physical proximity of the substance to employee duty stations was established.
In Gallagher, the “messy, sloppy, dirty ice cream” was on the floor inside the store, the vestibule, on the threshold of the exit door and “in rivulets running down the threshold ... to the sidewalk.” Gallagher, 332 Mass. at 562. The three cashiers working had a clear view of the floor at the exit door, the threshold, and the vestibule when they turned to get shopping bags, which they frequently did. Id. at 563. The court found that the ice cream could not have been where it was and in its melted condition without being exposed to the cashiers’ views since it was on the floor at the exit door through which all customers had to pass to leave the store. Id. at 564. The plaintiff was able to establish the approximate length of time the substance was on the floor because the ice cream had melted and also because of physical proximity to the employees duty stations because the cashiers has a clear view of the exit. See id.
In Foley, a restaurant proprietor was liable for a customer’s slip and fall on a stairway because the condition of the vomit on which she slipped and the location of the employees warranted an inference that the vomit had been on the stairway long enough to have been known of and removed. Foley, 293 Mass. at *75 234. The vomit was described as “drier than it was wet” and “a mixture of liquids and solids, hard in places and a little soft in others.” Id. at 233. The restaurant’s counters were located directly across from the stairway, about nine feet away, and staffed by about ten waitresses. Id. There was “no obstruction” between the counters and where the waitresses were located, and the stairs were plainly visible. Id. The court found that “a substance of the character described could not have been where it was without being exposed to the view of the waitresses at the . . . counters ...[,] the manager, or employee[s] . . .” Id. Again, both length of time and physical proximity were established.
Vacarro has not presented evidence sufficient to establish that the substance on which she slipped, was on the floor and in such proximity to hospital employees, that they should have become aware of it and removed it. No material issue of fact has been raised as to whether the hospital negligently failed to keep its premises in a reasonably safe condition.
III. Conditions Due to Wet Weather
A proprietor is not liable for slip and fall accidents where “the transitory conditions of [the] premises, due to normal use in wet weather, according to ordinary experience could not in reason have been prevented.” Wexler v. Stanetsky Mem. Chapel of Brookline, Inc., 2 Mass.App.Ct. 750, 751 (1975), quoting Lanagan v. Jordan Marsh Co., 324 Mass. 540, 542 (1949). In order to establish negligence by the proprietor, the plaintiff must show that the water on the floor was more than what “inevitably results from the tramping of many feet... under the conditions of weather then existing.” Id. (citations omitted).
Where there is an allegation that the plaintiff slipped and fell on a puddle of rainwater, the plaintiff demonstrates negligence with evidence of “a defect, or wear or other condition not natural to the flooring” which caused the floor to be particularly slippery when wet. Lowe v. National Shawmut Bank of Boston, 363 Mass. 74, 77 (1972); Murray v. Donelan, 333 Mass. 228, 229 (1955) (piece of tin nailed to floor by defendant made floor unusually slippery on rainy day); Laskey v. First Nat’l Stores, Inc., 317 Mass. 624, 626-27 (1945) (floor particularly slippeiy when rainwater combined with oil treatment placed on floor by defendant). In addition, evidence of the “presence of . . . water in larger quantity or for a greater length of time than was naturally to be expected in the circumstances” can establish negligence. Grace v. Jordan Marsh Co., 317 Mass. 632, 633 (1945); Correira v. Atlantic Amusement Co., 302 Mass. 81, 82 (1939) (evidence that water tracked in by patrons had, on a landing of a stairway, collected for over an hour and a half in a puddle four feet long and two and one half feet wide on the hard rubber tiling, which was slippery when wet, warrantedafindingofnegligence).
Vaccaro makes no allegation and presents no evidence of a defect or wear or other condition not natural to the floor causing the floor to be particularly slippeiy when wet.[3] The description of the puddle does not show that the water was present for a greater length of time than naturally is to be expected in the circumstances. See, e.g., Leary, 322 Mass. at 310; Tariff, 299 Mass. at 130; Kirmes v. Stop & Shop Companies, 1992 Mass.App.Civ. 196, 198-99 (1992) (dirty puddle of water measuring three feet by four feet insufficient to prove duration). Nor does evidence that the water consisted of “little tiny puddles” and “little drips” show that Vaccaro slipped on an unusually large accumulation of water. Compare Corriera, 302 Mass. at 82 (negligence where a four feet by two and one-half foot water puddle was “of such depth that a movement of the foot would cause a splash”) with Wexler, 2 Mass.App.Ct. at 751 (no negligence where puddle or pool of dirty water between three and four feet in length required inference that water deposit was “thin and perhaps not much more than a film”).[4]
The facts here are similar to Wexler. In Wexler, the plaintiff entered the defendant’s funeral home on a snowy day and, after stepping off a small carpet just inside the door, slipped and fell in a pool of muddy water on the marble floor. Id. A half hour before the plaintiff arrived, a smaller pool of clear water was observed in the same location but had grown larger and became muddier as the number of people entering the building increased. Id. An employee was seen near the puddle before the plaintiffs arrival. Id. There was no recoveiy because there was no evidence that the water on the floor “was of unusual depth or extent” or that the floor “for any reason, became peculiarly slippeiy when wet” and, thus, the court found that the water was not more than “inevitably results from the tramping of many feet . . . under the conditions of weather then existing.” Id. at 751-52.[5]
Vaccaro has not presented evidence from which a trier of fact could infer that the water in the registration area was more than what normally results from the tramping of many feet on a wet rainy day. As a matter of law no rational view of the evidence permits a finding of negligence. Goulart v. Canton Hous. Authy., 57 Mass.App.Ct. 440, 441 (2003) (“Ordinarily, sum-maiy judgment is not an appropriate means to resolve negligence cases, because the question of negligence is one of fact. However, á judge may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence.”).
IV. Duty to Warn
The owner or occupier of land has a duty to use reasonable care to keep the premises in reasonably safe condition for lawful visitors or to warn of any danger or defect on the premise that is not likely to be *76 known to them and of which the owner or possessor knows or ought to know. Mounsey v. Ellard, 363 Mass. 693, 710 (1973). The hospital, however, had no duty to warn of the puddle containing a foreign substance if it had no notice of the substance’s presence on the floor. There is no material issue of fact as to whether the hospital had notice of the foreign substance on the floor.
If the substance that Vaccaro slipped on was rainwater, she may only recover by establishing that the water was more than what results from use in wet weather, which she has failed to do. Proof of failure to clean the premises or put out warning cones is insufficient to establish negligence. See Ward v. Shaw’s Supermarket, Inc., 51 Mass.App.Ct. 1102, 1102 (2001) (no negligence where customer slipped on puddle of water in vestibule area of grocery store on rainy day despite the lack of safety cones, mats or rugs on the tile floor); Pettie, 1996 Mass.App.Div. at 43 (no negligence where on rainy day customer slipped on floor that was “soaking wet” and “slippery” despite the lack of mats or warning signs).
ORDER
The defendant University of Massachusetts Memorial Medical Center’s Motion for Summary Judgment is ALLOWED as to Counts I and II.

 The National Weather Service reported that Worcester Airport received .3 inches of rain between 1 and 3 p.m, and an additional .24 inches of rain between 3 and 4 p.m.

 Vaccaro’s contention that the liquid was a substance other than rainwater is based on Sheperd’s description that the liquid “looked like it had a tint to it” and that “there was no other water in the lobby ...”

 Even assuming that the “tint” to the water was another substance, this case is distinguishable from Laskey because in that case the condition causing the floor to be particularly slippery when mixed with rainwater was placed on the floor by the defendant. Laskey, 317 Mass. at 626-27. Here, there is no evidence that the tinted substance was on the floor due to the actions of hospital employees.

 The description of the hospital floor as “very, very wet” is insufficient to establish negligent condition of the floor. See Pettie v. Stop & Shop Supermarket Co., 1996 Mass.App.Div. 41, 43 (1996), citing Faulkner v. J.H. Corcoran & Co., 342 Mass. 94, 95 (1961). This court understands that Pettie is persuasive authority only.

 Vaccaro argues that Wexler can be distinguished from this case because the plaintiff in Wexler fell at the entrance of the funeral home, but Vaccaro fell at a location farther inside the hospital. This distinction is not material. The mere presence of the “transitory condition” in a location distant from the entrance does not, without evidence of the factors above, establish negligence. See Laskey v. First Nat’l Stores, Inc., 317 Mass. 624, 626-27 (1945) (negligence found when halfway through the store, plaintiff slipped and fell on floor that was particularly slippery due to rainwater combined with an oil treatment placed on floor by defendant); Correira v. Atlantic Amusement Co., 302 Mass. 81, 82 (1939) (evidence that water tracked in by patrons had, on a stairway landing, collected for over an hour and a half in a puddle four feet long and two and one-half feet wide on the hard rubber tiling, which was slippery when wet, warranted a finding of negligence by the plaintiff). See also Worster v. Eagle Bank, Civil No. 06CV1557F (Middlesex Super.Ct. July 26, 2007) (Curran, D., J.) [22 Mass. L. Rptr. 707] (summary judgment for defendant where plaintiff slipped on a “moisture area” that was “not a puddle” or “pooled water” but was “dirty and had a few footprints in it” after he entered the bank through the rear entrance, proceeded directly to the teller counter and later “turned around and took ten to fifteen steps towards the exit where he slipped and fell on the tile floor of the bank lobby”).